### Department of Treasury of Indiana *v.* Jackson et al.

[No. 16,608. Filed October 22, 1941. Rehearing denied December 5, 1941.]

38

*Omer Stokes Jackson,* Attorney General, *Samuel D. Jackson,* Attorney General, and *Joseph P. McNamara,* Deputy Attorney General, for appellant.

*Vitus G. Jones, Roland Obenchain, Paul M. Butler* and *Francis Jones,* all of South Bend for appellees.

BLESSING, C. J.—This was an action by the appellees against the appellant to recover a sum of fifteen hundred and fourteen dollars and sixty-nine cents

($1,514.69) previously paid by appellees as gross income taxes. The taxes paid by appellees include those assessed against the Building and Loan Association of South Bend for the year of 1935 and taxes assessed against the appellees' trustees for the last eleven months of 1936. The Tower Federal Savings and Loan Association joined in the complaint below for the sole purpose of consenting to the recapture of the taxes paid by appellees' trustees, and the controversy here concerns only the appellant and said appellees' trustees. The action was brought pursuant to the provision of the Acts of 1937, ch. 117, § 14; § 64-2614, Burns' 1933 (Supp.), § 15994, Baldwin's Supp. 1937. All of the evidence was stipulated. The material facts as they appear from the record disclose that during the year of 1935, the Building and Loan Association of South Bend, Indiana, hereinafter referred to as the association, operated on a restricted basis under the supervision of the Department of Financial Institutions of this State. In certain instances its accounts and notes receivable were obligations from persons who were not then able to pay the entire amounts owing by them, and also in certain instances the real estate before sold by the association on land contracts could not then be sold at a price which would yield the total amount then due on the land contracts respectively.

On February 1, 1936, the association was reorganized and federalized under the name of Tower Federal Savings and Loan Association, whereby certain acceptable assets of the old association were transferred to the Tower Federal Savings and Loan Association, and certain other assets were transferred to appellees' trustees under a certain trust indenture for the purpose of liquidation. Said trustees by reason of the assets transferred to them issued Participation Certificates to the

stockholders of the old association in lieu of their stock. In the year of 1935, and before the reorganization, the association then under the supervision of the Department of Financial Institutions of the State of Indiana, settled and compromised many loans secured by mortgages, in which the securing property had depreciated in value below the principal sum owing, and by reason of which the credit of the debtors was destroyed or materially impaired. During this period and in compromise and settlement of their indebtedness, certain debtors, in lieu of cash, surrendered stock which they held in said association in full settlement and satisfaction of the indebtedness due said association including principal and interest. Such stock so surrendered was accepted at its par or face value and of the outstanding shares of stock received by it in compromises and settlements, the association applied $55,795 in par value to interest due and the remainder in par value to the principal of said mortgage debts. The appellees' trustees followed the same plan and under like circumstances in 1936, and of the outstanding Participation Certificates received by them in lieu of cash in compromises and settlements of numerous items of indebtedness secured by mortgages they applied $60,012.65 in par value of said certificates so received to interest accruals on the respective compromised debts. However, in the process of bookkeeping, by both the association and the trustees, in said instances of compromises and settlements the full amount of principal was credited to the debtor's account and the full amount of accrued interest was likewise credited to the debtor's account and if in a particular instance, a loss at par value was sustained it was elsewhere charged to a fund for contingent losses.

Appellant, Department of Treasury, demanded of the Building and Loan Association and the trustees, that they pay gross income tax on the entire amounts credited on their books to interest as a result of the transactions in the years of 1935 and 1936, wherein stock and participation certificates were accepted in lieu of cash at their par or face value. Taxes on such total amount of interest so credited at the rate of 1% were paid by appellees' trustees after written protests and objections had been overruled. Following the denial of appellant of a claim for a refund of the taxes so paid by said trustees this action was brought to recapture the taxes so paid. The demand for such taxes made by the appellant was based on the section of the Gross Income Tax Act, which provides that in case of building and loan associations the term "gross income" shall be deemed to be gross earnings. § 1 (g) of chapter 50, page 390, Acts 1933, § 64-2601 (g), Burns' 1933 (Supp.).

Upon the evidence submitted to it by stipulation the court found that appellees' trustees were entitled to recover the sum of $1,514.69 together with interest and costs, and that appellee Tower Federal Savings and Loan Association had no interest in said property and entered judgment accordingly. From this judgment appellant appealed assigning as error the overruling of its motion for a new trial; the specifications in said motion, and not waived in appellant's brief, being that the decision of the court is not sustained by sufficient evidence and is contrary to law, and also error of the court in admitting in evidence, over objection, Item 1 of the stipulation referred to as "Joint Exhibit B."

It appears from Item 1 of "Joint Exhibit B" that during the year of 1935 the market value of shares of stock of said association was at no time in excess of

64 cents on the dollar, and the average market value during that year was 63.26 cents. It also appears that in the year of 1936 the market value of the Trust Participating Certificates, issued by appellees' trustees did not exceed 51 cents on the dollar, and the average market value for the year was 50.115 cents.

Item 1 of "Joint Exhibit B" also contains this language: "Shares of stock in said Building and Loan Association and the Participating Certificates issued by said original trustees had an actual value substantially less than their face value." While the appellant admitted the truth of this statement and the correctness of the figures as to the market value of the said stock and certificates hereinbefore set out, under its reservation to object to the competency of the facts, it objected to the above quoted language for the reason that it is not supported by the books and records of either the Building and Loan Association or by the books and records of the trustees. Appellant also objected to Item 1 of said exhibit and contended that the best evidence of the actual value was the books and records of the organization. Further objection was made on the ground that the proof of value by market price is justified only when it presents the most practical method of arriving at the value, and is not justified when one of the parties to the transaction is the organization itself, for the reason that the organization always knows the exact value and does not have to depend upon market value. The last objection to said Item 1 interposed by the defendant is that the market value of the shares and certificates would be important only in the event said shares and certificates were bought for resale or to be carried as assets on the books of either the association or the trustees. Also that the compromises and settlements by the associa-

tion, and later by the trustees, were in discharge of debts of the association, and later of the trustees. Upon the admissibility of said Item 1 of said exhibit, the question for our determination is whether the amounts credited upon the books as interest by the association upon the receipt of shares of stock, and the amounts credited as interest by appellees' trustees upon receipt of Participating Certificates, at their face or par value, is taxable as gross income, regardless of actual or market value or such stock and Participation Certificates.

The term "gross income" as used in the act means total gross receipts, and as applied to building and loan associations is deemed to be gross earnings in respect to that part of the total gross income which is derived from the business. The act does not impose an occupational tax but imposes a tax on the privilege of receiving income. *Miles* v. *Dept. of Treasury* (1935), 209 Ind. 172, 199 N. E. 372. The proper inquiry by the trial court in this action, and under the facts, pertained to the actual amount of income received in the form of interest on loans. In determining the income received, we are of the opinion that it was proper for the trial court to look beyond the bookkeeping entries and to consider along with such entries the substance of the transactions, since income is to be determined from the actual facts, as to which the corporate books or the books kept by the trustees were only evidentiary. *Doyle* v. *Mitchell Brothers Co.* (1918), 247 U. S. 179, 38 Sup. Ct. 467, 62 L. Ed. 1054. Real facts and not bookkeeping entries give rise to income, books of accounting being neither indispensable nor conclusive. *In re Sheinman* (1926), 14 F. (2d) 323; *Southern Pac. R. Co.* v. *Muenter* (1919), 260 F. 837. It is the interest actually received

in cash or its equivalent which is to be returned as gross income. *Helvering* v. *Missouri State Life Ins. Co.* (1934), 78 F. (2d) 778, 780. Claims for taxes cannot be based on mere bookkeeping. *In re Sheinman, supra.*

If the trial court was correct in its holding that the actual value of the stock and Participating Certificates was the proper standard by which to measure income, it is obvious that the bookkeeping entries showing the interest paid in full would not reflect the true amounts received for the purpose of showing taxable income. The stipulation of facts furnishes an explanation of the entries showing the full payment of interest in this language: "If in the particular transaction a loss at par value was sustained it was elsewhere charged to a fund for contingent losses."

No question is raised as to the legality of the settlements made and we may assume that in such settlements the officers of the association in 1935, and the trustees in 1936, received in each instance a value equal to or in excess of the enforcible liability of the compromising debtors. On the other hand the undisputed facts show that the value of the stock and the value of the certificates surrendered in each of such compromises and settlements was less than the principal of the respective items of indebtedness compromised. Under such circumstances we are of the opinion that the evidence of the actual income, necessarily determined by the actual or market value of the stock and certificates set out in said Item 1 of "Joint Exhibit B," was properly admitted.

The question presented as to whether the acceptance of these shares of stock and Participating Certificates at their par or face value rendered appellees' trustees liable for tax to the extent of the amounts credited to interest, regardless of actual or market value thereof

is a question of first impression in this State and our search for authorities in other jurisdictions reveals no case dealing directly with taxes on gross income.

Appellant, to support its proposition, has cited cases involving the foreclosure of mortgages wherein the mortgaged property was bid in at sale, but the rule of law applicable in such cases is held not to apply in cases wherein there is a surrender by the mortgagor of the mortgaged property in consideration for the cancellation of the debt. The law is stated in *Helvering* v. *Missouri State Life Ins. Co., supra,* as follows:

"When mortgaged property is sold on foreclosure for an amount sufficient to pay the mortgage debt with accrued interest, the mortgagee has received payment in full of its debt, and that is so, regardless of whether the highest bidder at the sale is the mortgagee or a stranger."

"The same rule, however, does not, we think, apply to a surrender by the mortgagor to the mortgagee of the mortgaged real estate in consideration of the forgiveness of the indebtedness. The mortgagee in such a case exchanges the loan for the land. If the land is worth as much or more than the amount due upon the loan with accrued interest, the exchange results in the equivalent of payment in full, but not otherwise. Certainly, the accrued interest upon a mortgage is not paid by the acceptance of mortgaged property which is worth less than the principal of the loan. Such a transaction produces no income to the mortgagee. That the insurance company, in lieu of foreclosure, takes the land and releases the mortgagor from liability, and carries the land on its books at the full amount which it has invested in the land, namely, the debt and accrued interest, does not justify the conclusion that accrued interest has been paid. Bookkeeping entries do not constitute income."

It is our opinion that for the purpose of determining gross income in the case at bar the actual value of the stock and certificates was controlling. It is argued by

the appellant that a common business practice of financial institutions is that payments on indebtedness are credited to accrued interest, while some of the principal remains unpaid. Undoubtedly this is the rule as to partial payments, but the question of partial payments is not involved in this case. This case involves compromises and settlements of the entire amount of the indebtedness due and unpaid. Appellant also argues that in these settlements the association, and later the trustees, were discharging a liability to the individual who surrendered his stock and therefore such liability should be taken into consideration as an element of income. With this contention we cannot agree. The sole question here is a question of gross income. When the principal upon the debts compromised was originally loaned, it was anticipated that interest would be paid according to the contract. When the debt was compromised for less than the amount of the principal, it is inconceivable that the value of the thing received by the creditors can be said to be "gross earnings."

The law will look to the substance of the transaction regardless of its form or color. *State ex rel. Matthews, Governor* v. *Forsythe* (1897), 147 Ind. 466, 44 N. E. 593; *Hively* v. *School City of Nappanee* (1930), 202 Ind. 28, 171 N. E. 381; *Milk Control Board of Indiana* v. *Phend* (1937), 104 Ind. App. 196, 9 N. E. (2d) 121. We are justified in this case in applying the principle that methods of keeping records are not permitted to alter the substantial rights of the respective parties affected in the absence of estoppel. *Sindlinger* v. *Dept. of Financial Institutions* (1936), 210 Ind. 83, 199 N. E. 715; *Rottger, Rec.* v. *First-Merchants Natl. Bank* (1934), 98 Ind. App. 139, 184

N. E. 267; *Terre Haute Trust Co.* v. *Scott, Rec.* (1932), 94 Ind. App. 461, 181 N. E. 369.

There was ample evidence to support the decision of the trial court that no income in the form of interest on its loans was actually received by the association, and later by the appellees' trustees.

Finding no reversible error, the judgment is hereby affirmed.

Curtis, J., not participating.

NOTE.—Reported in 37 N. E. (2d) 31.