THE CITY OF ROLLING MEADOWS, Plaintiff-Appellant, *v.* JEFFREY M. KOHLBERG *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 78-1279

Opinion filed March 31, 1980.

Donald M. Rose, of Rolling Meadows (Donald M. Rose and Kathleen Ross, both of Moriarty, Rose & Hultquist, Ltd., of counsel), for appellant.

Patrick A. Tuite and Stefan I. Mozer, both of Chicago, for appellees.

Mr. JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, City of Rolling Meadows, filed a misdemeanor complaint charging defendants, Jeffrey M. Kohlberg and William A. Farber, with a violation of its obscenity ordinance. A search warrant had been issued and a movie film seized by plaintiff's police officers. The court suppressed the film and denied plaintiff's motion for production of the film at trial. Judgment was entered in favor of defendants in a bench trial. This appeal was taken from the judgment. We affirm.

On September 30, 1977, at about 8:30 p.m., plaintiff's police officers entered defendants' movie theater and seized the film entitled Cinderella. The police officers had a search warrant authorizing them to enter the premises and seize the film. The warrant had been issued on September 30, 1977, at 2:27 p.m. and was founded upon the affidavit of police detective Daniel Ballantine. His affidavit stated that on or before September 30, 1977, he paid money "for an admission ticket to the Meadows Theater, and personally viewed the movie film titled, 'Cinderella'."

The film was inventoried and turned over to the judge who had issued the warrant. A misdemeanor complaint, signed by Detective Ballantine, was filed. The complaint charged defendants with committing the offense of obscenity in that they permitted "an obscene movie picture" to be shown in violation of plaintiff's ordinance. The ordinance provides only for the imposition of a fine.

Shortly after the complaint was filed, defendants filed a motion to suppress the film as evidence, alleging that the search warrant was based upon the perjurious affidavit of Detective Ballantine. The motion was supported by affidavits stating that the film was not exhibited to the admission-paying public until 7 p.m. on September 30, 1977, and that it was not available for viewing at the theater by any member of the public prior to that time. Defendants argued that since Detective Ballantine's affidavit stated that he personally viewed the film in the theater by paying for an admission ticket before 2:27 p.m. on September 30, 1977, his affidavit is perjurious. Plaintiff did not challenge the accuracy of defendants' affidavits, but rather attempted to abandon the search

warrant as being "inartfully drawn." The court granted the motion to suppress and ordered plaintiff to return the film.

Plaintiff then served defendants with a notice and motion to produce the film for trial pursuant to Supreme Court Rule 237(b). (Ill. Rev. Stat. 1977, ch. 110A, par. 237(b).) The motion was denied because the film had been suppressed. Thereafter, defendants filed a motion to bar plaintiff's police officers from testifying as to the film's content. The motion was granted. Plaintiff moved for a trial on the merits, but rested its case without offering any evidence. The court, therefore, entered judgment in favor of defendants.

■■ Plaintiff does not argue on appeal that the court erred in suppressing the film. Rather, plaintiff argues that the court erred in denying the motion to produce the film at trial because the film was admissible under the independent source exception to the exclusionary rule. Plaintiff supports its argument by claiming that since its police officers had paid admission to the theater and viewed the obscene film[1] prior to its seizure, the fact that the film is obscene is based on knowledge gained from a source independent of the search warrant.

■■ ■ The exclusionary rule and the independent source exception to the rule are matters involving criminal proceedings.[2] Plaintiff recognizes

---

[1] Plaintiff continuously makes a conclusionary reference to the film as obscene, although there has been no judicial determination to that effect. In fact, there has not been a proper determination before a judicial officer that there is even probable cause that the film is obscene. It is for this reason that any seizure of the film was illegal. A police officer may not seize a film shown at a public theater solely on the police officer's own conclusion that the film is obscene. (*Roaden v. Kentucky* (1973), 413 U.S. 496, 502-06, 37 L. Ed. 2d 757, 93 S. Ct. 2796.) Plaintiff also suggests that the film should not have been suppressed since knowledge that the film is obscene was obtained by its police officers while viewing the film in the theater before it was seized and plaintiff withdrew the illegal warrant after the film was seized. Apparently, plaintiff presumes that by showing the movie to the general public, defendants had no legal expectation of privacy against governmental intrusion. But there is no basis for the notion that a theater consents to searches and seizures that do not conform to Fourth Amendment guarantees merely because it invites the public to enter. (*Lo-Ji Sales v. New York* (1979), 442 U.S. 319, 60 L. Ed. 2d 920, 99 S. Ct. 2319.) In our society, all purported violations of law must be dealt with within the framework of constitutional guarantees. The seizure of the film under the circumstances described clearly transgresses those guarantees and the film was, therefore, properly suppressed. See *Lo-Ji Sales*, 442 U.S. 319, 60 L. Ed. 2d 920, 99 S. Ct. 2319; *Roaden*, 413 U.S. 496, 506, 37 L. Ed. 2d 757, 93 S. Ct. 2796.

[2] The independent source exception to the exclusionary rule had its genesis in *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 391-92, 64 L. Ed. 319, 321, 40 S. Ct. 182, 182-83, where the court stated:

"The proposition could not be presented more nakedly. It is that although of course its seizure was an outrage which the government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them ° ° °. In our opinion such is not the law. It reduces the 4th Amendment to a form of words. ° ° ° The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall

this fact since it relies solely on criminal cases to support its argument. Therefore, in considering plaintiff's contention, we must resort to the Illinois Code of Criminal Procedure. The Code provides that if a motion to suppress evidence is granted, "the property shall be restored, unless otherwise subject to lawful detention, and it shall not be admissible in evidence against the movant at any trial." (Ill. Rev. Stat. 1977, ch. 38, par. 114—12(b).) Moreover, an order suppressing evidence in a criminal proceeding is an appealable order. If it is not appealed, its validity and the consequent prohibition against admission of the particular evidence cannot be challenged or relitigated in the same or another trial in Illinois. (*People v. Steskal* (1973), 55 Ill. 2d 157, 161; *People v. Taylor* (1971), 50 Ill. 2d 136, 139; *People v. O'Neil* (1971), 133 Ill. App. 2d 786, 788-89. Since there was an order suppressing the film which plaintiff did not appeal, the film was not admissible against defendants when plaintiff presented its motion to produce the film. Therefore, the court did not err in denying plaintiff's motion to produce the film at trial despite plaintiff's argument that the film was admissible under the independent source exception to the exclusionary rule.

■■ Plaintiff next claims that the rules of civil rather than criminal procedure apply to this case,[3] and therefore, plaintiff's motion to produce the film should have been allowed notwithstanding the suppression order. The flaw in plaintiff's contention is that the motion was properly denied regardless of whether the rules of civil or criminal procedure apply.

■■ At the time plaintiff presented *its motion to produce the film*, there was an effective order suppressing the film and plaintiff never challenged or moved to vacate the order. Thus, even if we treat the suppression order as having been entered pursuant to a motion in limine in a civil proceeding, it was nonetheless an existing, effective order. Although

---

not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the government's own wrong cannot be used by it in the way proposed."
*In Wong Sun v. United States* (1963), 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417, the court described the independent source exception to the exclusionary rule in the form of the "fruit of the poisonous tree" metaphor:
"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " Maguire, Evidence of Guilt 221 (1959).
See also *People v. Hornal* (1975), 29 Ill. App. 3d 308, 316-17, 330 N.E.2d 225, 231.

[3] A prosecution for the violation of a municipal ordinance punishable by fine only is quasi-criminal. It is to be treated as a civil case unless there is reason stemming from the criminal nature of the action to depart from the procedures in the ordinary civil case. *City of Danville v. Hartshorn* (1973), 53 Ill. 2d 399, 402-04; *City of Carbondale v. Irving* (1977), 45 Ill. App. 3d 699, 702-03; *City of Highland Park v. Curtis* (1967), 83 Ill. App. 2d 218, 222.

motions to suppress are generally labeled motions in limine in civil cases, motions to suppress are proper in civil cases. When evidence is suppressed in a civil case, it may not be used in the trial unless the order is vacated or set aside. (See *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 134-36; Hunter, Trial Handbook for Illinois Lawyers §8:4, at 77 (4th ed. 1972).) Here, the order suppressing the film was in effect at the time plaintiff presented its motion to produce the film. The trial court, therefore, properly denied plaintiff's motion under the rules applicable in a civil proceeding.

Plaintiff next contends that the court erred in precluding plaintiff's police officer from testifying as to the content of the film in order to prove that the film was obscene. Plaintiff claims that the police officer saw the film at the theater on the night he illegally seized the film. The trial judge ruled, however, that the plaintiff could not prove that the film is obscene solely by the testimony of the police officer. We agree.

Although obscenity is a form of expression, it is not protected under the First Amendment. (*Paris Adult Theater I v. Slaton* (1973), 413 U.S. 49, 54, 37 L. Ed. 2d 446, 455, 93 S. Ct. 2628, 2633.) But sexuality and obscenity are not synonymous, and matter which is sexually oriented but not obscene is fully protected by the First Amendment. (See *Roth v. United States* (1957), 354 U.S. 476, 487, 1 L. Ed. 2d 1498, 1508, 77 S. Ct. 1304; *Paris Adult Theater I* (1973), 413 U.S. 49, 78, 37 L. Ed. 2d 446, 470, 93 S. Ct. 2628, 2644 (Brennan, J., dissenting).) The basic guidelines for the trier of fact in an obscenity case must be: (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable statute or ordinance; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. (*Miller v. California* (1973), 413 U.S. 15, 24, 37 L. Ed. 2d 419, 93 S. Ct. 2607.) Using these criteria, no one may be convicted for the sale or exposure of obscene materials unless the materials depict or describe patently offensive hard-core sexual conduct specifically defined by the regulating statute or ordinance. *Jenkins v. Georgia* (1974), 418 U.S. 153, 160, 41 L. Ed. 2d 642, 94 S. Ct. 2750; *Miller*, 413 U.S. 15, 27, 37 L. Ed. 2d 419, 93 S. Ct. 2607.

⊙ 10, 11 It has been said of hard-core pornography, " 'I could never succeed in [defining it] intelligibly,' but 'I know it when I see it.' " (*Miller*, 413 U.S. 15, 39, 37 L. Ed. 2d 419, 440, 93 S. Ct. 2607, 2623 (Douglas, J., dissenting, quoting *Jacobellis v. Ohio* (1964), 378 U.S. 184, 197, 12 L. Ed. 2d 793, 804, 84 S. Ct. 1676 (Stewart, J., concurring).) This statement is appropriate here for it illustrates that obscenity is not a subject that lends itself to a proper conclusion based solely on testimonial description.

Hard-core pornography can and does speak for itself. (See *Paris Adult Theater I v. Slaton* (1973), 413 U.S. 49, 56 n.6, 37 L. Ed. 2d 446, 456 n.6, 93 S. Ct. 2628, 2634 n.6.) It follows that in an obscenity trial, the film itself, taken as a whole and within its own context, is an essential part of the proof.[4] Since plaintiff's only evidence of obscenity would have been its police officer's testimony, the trial judge properly ruled that the police officer could not testify as to the content of the film.

Plaintiff also claims that defense counsel admitted and stipulated during colloquy between court and counsel that plaintiff's police officer would be able to testify as to the content of the film. We have examined the record and find no such admission or stipulation. Defense counsel's statements merely refer to the police officer's ability to testify as any other witness. The statements do not manifest an agreement that the police officer could testify as to the content of the film in order to prove that it is obscene.

██ In addition, plaintiff's contention must be rejected because it did not make an offer of proof as to the testimony of the police officer. Indeed, the name of the witness plaintiff intended to call does not even appear in the record. The law is well established that an offer of proof must be made if the exclusion of evidence is to be assigned as error. If no offer of proof is made, the trial court's ruling will be affirmed. (*O'Brien v. Walker* (1977), 49 Ill. App. 3d 940, 949; *People v. Limas* (1977), 45 Ill. App. 3d 643, 649.) We reject plaintiff's contention for this reason as well as the other reasons previously stated.

Accordingly, the judgment is affirmed.

Judgment affirmed.

McGILLICUDDY, P. J., and McNAMARA, J., concur.

---

[4] A distinction must be made here between a trial on the merits and the issuance of a search warrant. Of course, the *Miller* guidelines must be applied in either situation. However, there is a difference in the degree of evidence that is necessary in the two instances. Less evidence is required for probable cause than for a conviction on the merits. Thus, although the film must be put in evidence for consideration by the trier of fact in order to convict a defendant, it may not be necessary for a judicial officer to view the film before issuing a search warrant if the affidavit supporting the search warrant is sufficient to show probable cause that the film is obscene. See *United States v. Middleton* (5th Cir. 1979), 599 F.2d 1349, 1357. But see *Lee Art Theatre v. Virginia* (1968), 392 U.S. 636, 637, 20 L. Ed. 2d 1313, 88 S. Ct. 2103, where the court went so far as to suggest that it was an open question whether a judge need "have viewed the motion picture before issuing the warrant." *Heller v. New York* (1973), 413 U.S. 483, 488, 37 L. Ed. 2d 745, 751, 93 S. Ct. 2789, 2792.