(No. 53105.—

UNITED AIR LINES, INC., Appellee, v. J. THOMAS JOHNSON, Director of Revenue, *et al.,* Appellants.

*Opinion filed March 31, 1981.*

MORAN and SIMON, JJ., took no part.

William J. Scott and Tyrone C. Fahner, Attorneys General, of Springfield (Joseph D. Keenan III, Assistant Attorney General, of counsel), for appellants.

Paul M. Tschirhart and Joseph T. Kane, of Chicago (Philip J. Hogan, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This case involves the application of the use tax exemption provided by section 3(c) of the Use Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 439.3(c)). The specific question is whether an Illinois taxpayer who, by contractual agreement, pays an Indiana seller's Indiana gross income tax liability (Ind. Code sec. 6—2—1—1 *et seq.* (1978)) resulting from the sale of fuel may claim an exemption from its Illinois use tax liability equal to the amount of the Indiana taxes paid. We hold that it cannot.

This litigation began in 1963 when United Air Lines sought to enjoin collection of the Illinois use tax on aviation fuel purchased by United from the Shell Oil Company. The fuel was purchased in Indiana and stored in

Illinois for use in United's interstate operations from Illinois airports. After final determination that the tax was applicable (*United Air Lines, Inc. v. Mahin* (1971), 49 Ill. 2d 45, *vacated and remanded* (1973), 410 U.S. 623, 35 L. Ed. 2d 545, 93 S. Ct. 1186, *affirmed on remand* (1973), 54 Ill. 2d 431), United sought a refund from the protest fund into which it had previously paid the Illinois use tax. The requested refund was for an amount of money equal to the sum United paid to Shell Oil Company to satisfy the Indiana gross income tax obligation incurred by Shell as a result of the sale. An order of the circuit court of Cook County denying the refund was reversed by the appellate court. (79 Ill. App. 3d 1004.) Upon petition by the Department of Revenue, we granted leave to appeal pursuant to Rule 315(a) (73 Ill. 2d R. 315(a)).

The Illinois use tax is a tax upon the privilege of using personal property within this State. (*United Air Lines, Inc. v. Mahin* (1971), 49 Ill. 2d 45, 46.) To avoid "actual or likely multistate taxation," several exemptions from use tax liability are provided in the Act. The exemption relevant to this case provides the tax imposed shall not apply to "the use, in this State, of tangible personal property which is acquired outside this State and caused to be brought into this State by a person *who has already paid a tax in another State in respect to the sale, purchase or use of such property,* to the extent of the amount of such tax so paid in such other State." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 120, par. 439.3(c).) The question before us is whether United has brought itself within this statutory exemption, thereby qualifying for a refund from the protest fund. In addition to the question concerning the applicability of the section 3(c) exemption to the facts of this case, United raised, and both sides have argued, the issue of whether article I, section 8 (the commerce clause) of the United States Constitution and the cases decided

thereunder prohibit the denial of an exemption to United.

The Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 440 *et seq.*) was enacted in 1933. Originally, and as amended, the Act imposes a tax upon the privilege of retail selling within this State. The responsibility for paying the tax, which is measured as a percentage of the selling price, rests upon the retailer. (*First Chicago Building Corp. v. Department of Revenue* (1977), 49 Ill. App. 3d 237, 238.) The Act does, however, contain pass-through language that permits the seller to pass the tax on to the purchaser. (See, *e.g.,* Ill. Rev. Stat. 1975, ch. 120, par. 441.) The Retailers' Occupation Tax Act, however, could not reach purchases made outside the State. Consequently, a person purchasing personal property outside Illinois and subsequently transporting the property into the State avoided Illinois tax liability on the transaction.

In 1955, Illinois passed the Use Tax Act. (See Ill. Rev. Stat. 1977, ch. 120, par. 439.1 *et seq.*) Its basic purposes are to complement the Retailers' Occupation Tax Act by preventing the evasion of tax on purchases made outside the State and to equalize the competitive disadvantage of Illinois retailers who face retailers' occupation tax liability. (*Illinois Road Equipment Co. v. Department of Revenue* (1965), 32 Ill. 2d 576, 580.) As stated earlier, the Illinois use tax is imposed on the privilege of using personal property within the State. The tax imposed applies to *all* property used in Illinois regardless of where it was acquired. (Ill. Rev. Stat. 1977, ch. 120, par. 439.3.) The Use Tax Act complements the Retailers' Occupation Tax Act in such a fashion so that an Illinois retailer who collects the use tax as an agent of the State is correspondingly relieved of his retailers' occupation tax liability on the transaction. (Ill. Rev. Stat. 1977, ch. 120, par. 439.8.) On the other hand, purchasers who seek to avoid having the retailers' occupation tax liability passed on to them by

buying goods outside the State face use tax liability on goods they bring into Illinois.

Indiana imposes a tax burden directly upon retail purchasers. It does so through a combination gross retail sales and use tax. The gross retail sales tax act looks to the transaction of sale itself as the taxable event. (Ind. Code sec. 6—2—1—37 (1978).) Both Indiana use tax and gross retail sales tax place the taxing burden squarely upon the purchaser and relegate the duty of collection to the retailer. (Ind. Code secs. 6—2—1—44, 6—2—1—49 (1978).) These two Indiana taxes have been in effect since 1963. They function in much the same manner as the Illinois retailers' occupation tax and use tax, including a provision which exempts from the Indiana use tax those transactions in which the gross retail sales tax has already been paid. Ind. Code sec. 6—2—1—43 (1978).

Indiana, however, imposes an additional burden upon all of its residents. Since 1933, prior to the enactment of its retail sales tax and use tax, Indiana has collected revenues under a statute that imposes a tax upon the receipt of income. (Ind. Code sec. 6—2—1—2 (1978).) Under the Indiana Gross Income Tax Act, the taxable event that gives rise to the obligation is the receipt of income. (*International Harvester Co. v. Department of Treasury* (1944), 322 U.S. 340, 346, 88 L. Ed. 1313, 1317, 64 S. Ct. 1019, 1022; *Gross Income Tax Division v. P. F. Goodrich Corp.* (1973), 260 Ind. 41, 292 N.E.2d 247.) The Indiana gross income tax is specifically levied upon the privilege of receiving income. (*Miles v. Department of Treasury* (1935), 209 Ind. 172, 199 N.E. 372; *Department of Treasury v. Jackson* (1941), 110 Ind. App. 36, 37 N.E.2d 31.) The tax is levied upon *all* income, regardless of its source, based upon a percentage of the gross amount received in various transactions. While the tax applies to numerous business dealings, including the sale of personal property, it is also levied against earned wages and trans-

actions in which no business is conducted at all. (Ind. Code sec. 6–2–1–1(m) (1978).) As applied to sales, the tax is measured as a percentage of the gross amount received regardless of gain. Gross income, as used in the Indiana Act, does not mean total sales less cost of goods sold, but in fact means gross receipts. (*Kroger Co. v. Department of Revenue* (Ky. App. 1977), 556 S.W.2d 156; Ind. Code sec. 6–2–1–3(c) (1978).) However, the tax is not imposed on a sale-by-sale basis, but upon the gross amount received from the aggregate of all sales. (See Ind. Code sec. 6–2–1–15 (1978).) This tax is expressly levied in addition to all other taxes. Ind. Code sec. 6–2–1–2 (1978).

In this case we are concerned only with the interaction of the Indiana gross income tax and the section 3(c) exemption from the Illinois use tax. Indiana's gross retail sales tax or its use tax is not involved. The factors which distinguish Indiana's gross income tax from both its gross retail sales and use tax are that the gross income tax applies to the receipt of *all* income and is levied upon the person receiving it. Although in the case of retail sales transactions the gross income tax *may in fact* be passed on to purchasers, nothing in the Indiana statutes suggests that this practice is required or authorized. In fact, Regulation 404 of the Gross Income Tax Division of the State of Indiana provided:

> "Passing the Tax on.—Since the gross income tax Act is silent upon the matter of adding this tax to the selling price or charges, the adding of such tax to such selling price or charges must be entirely a matter of contractual agreement between the buyer and the seller, and the Department will therefore neither authorize the adding of the tax nor condemn the failure to do so, and will look *only to the taxpayer* for the tax upon his total gross receipts. *Since taxpayers are not made the agents of the State to collect gross income tax, any amount added as the tax and collected by a taxpayer must be considered as an additional price received, and will be a part of the gross receipts of a taxpayer and must be reported as taxable income.*"

(Emphasis added.) (This regulation was repealed in January 1956 and replaced by Instruction 2–2 in substantially the same language.)

The Indiana gross income tax is not a tax on the sales transaction. With respect to the purchaser in a sales transaction, the Indiana gross income tax imposes no burden at all.

Section 3(c) of our Use Tax Act, which we quote above, exempts from the payment of that tax those who have paid a tax in another State "in respect to the sale, purchase or use of such property." United points out that this exemption does not apply only to those who have paid a *sales tax* or a *use tax* in another State. It is United's position that the tax it paid in Indiana, though not a sales tax or a use tax, was, nonetheless, a tax *in respect to* the sale of property and thus falls within the language of the use tax exemption.

United relies heavily upon a statement made by the Kentucky Appellate Court in *Kroger Co. v. Department of Revenue* (Ky. App. 1977), 556 S.W.2d 156. In that case the court stated that the Indiana gross income tax "is the functional equivalent of a sales tax." (556 S.W.2d 156, 158-59.) Thus, United argues, the tax is a tax in respect to the sale of property and its payment entitles United to an exemption under section 3(c) of our Use Tax Act. The language in *Kroger* must be viewed in the context of that case. The court was there determining whether the Kroger Company could deduct the Indiana gross income tax in computing its Kentucky corporation income tax liability. The court pointed out that under the Indiana statute, the term "gross income" has a different meaning than it does under the Internal Revenue Code, where it means total sales less costs of goods sold. Under the Indiana statute, "gross income" means gross receipts and is unrelated to any concept of gain. In this respect the term does resemble a sales tax, in that it is to be treated the same as a sales

tax and is therefore deductible in arriving at net income taxable under the Kentucky statute. The court, in stating that the Indiana tax is the functional equivalent of a sales tax, was not attempting to define the taxable event or the person upon whom the incidence of taxation is to fall.

We have noted that the Indiana gross income tax is levied on the privilege of earning or receiving income. It is not, as United's brief argues, a tax on the privilege of doing business in Indiana. In *Department of Treasury v. Jackson* (1941), 110 Ind. App. 36, 43, 37 N.E.2d 31, 34, the court said that the Indiana act does not impose an occupational tax. In *Mann v. Schnarr* (1950), 228 Ind. 654, 95 N.E.2d 138, the court considered the allocation of certain contractor's costs under the mechanic's lien statute. The court held that operating costs were properly included as work and material under the mechanic's lien statute, but items classified as overhead were not. The court held that workmen's compensation insurance, as well as social security taxes, were properly included as operating costs. However, the amount of gross income tax attributable to the transaction was not. "The gross income tax paid to the state is a direct tax upon the contractor and not an operating cost, but rather an overhead charge." *Mann v. Schnarr* (1950), 228 Ind. 654, 667, 95 N.E.2d 138, 143.

We conclude that the Indiana gross income tax is not a tax "in respect to the sale, purchase or use of" property within the meaning of section 3(c) of our Use Tax Act. The mere fact that United contracted to pay Shell's gross income tax liability does not entitle United to an exemption from the Illinois use tax any more than if United would have contracted to pay any other of Shell's direct tax obligations or overhead charges.

United also relies on *Philco Corp. v. Department of Revenue* (1968), 40 Ill. 2d 312, and argues that it is irrelevant that Shell was actually the taxpayer in Indiana as

long as the economic consequences fell on United. In *Philco,* Rental Equipment, Inc. was engaged in the business of leasing heavy equipment. It leased equipment to contractors for use on construction projects in Illinois. The Department of Revenue assessed use taxes against Rental for the use of its equipment in Illinois and refused to allow Rental credit for Missouri sales taxes paid on equipment previously leased to Missouri residents because Rental had passed that tax on to its customers. This court held that the purpose of the exemption in section 3(c) was to prevent actual or likely multistate taxation and that that purpose would not be served by centering on the identity of the person who made the payment. Thus the fact that Rental had passed the tax on to the Missouri lessees was not important. Instead, the focus was on whether the tax paid in Missouri was the type of tax for which the General Assembly intended to give credit against use tax liability. This court found that the tax paid by the Missouri lessees was a sales tax, and accordingly Rental was entitled to a credit in that amount against its use tax liability in Illinois. *Philco* does not support United's position. In that case it was determined that the tax Rental had passed on to the Missouri lessees was the type of tax for which the General Assembly intended to give credit; that is, a sales tax. We have concluded here that the Indiana gross income tax is not a tax with respect to the sale of property and thus is not the type of tax for which the General Assembly intended that a credit against use tax liability should be allowed.

A person claiming an exemption from taxation has the burden of proving clearly that he comes within the statutory exemption. Such exemptions are to be strictly construed, and doubts concerning the applicability of the exemptions will be resolved in favor of taxation. (*Christian Action Ministry v. Department of Local Government Affairs* (1978), 74 Ill. 2d 51, 62; *Telco Leasing, Inc. v.*

*Allphin* (1976), 63 Ill. 2d 305, 310; *Heller v. Fergus Ford, Inc.* (1975), 59 Ill. 2d 576, 579.) Every presumption is against the intention to exempt property from taxation. (*Follett's Book & Supply Store, Inc. v. Isaacs* (1963), 27 Ill. 2d 600, 606.) We therefore decline to construe the exemption granted in section 3(c) to exempt from Illinois use tax liability amounts paid by United as Indiana gross income tax attributable to the sale of fuel by Shell.

We also do not believe that the failure to grant United an exemption would subject United to unconstitutional multistate taxation. United's obligation to pay the amount of the Indiana gross income tax attributable to the sale of fuel arose not from an imposition of a tax on United by the State of Indiana, or even from the imposition of a tax upon the sale of fuel. United's obligation arose instead by virtue of its contract with Shell to pay Shell's gross income tax. The payment by United of the Illinois use tax on fuel it had purchased from Shell, and the assumption by United of the direct tax which Indiana imposed upon Shell as a result of the purchase, do not constitute multistate imposition of taxes upon United.

The Illinois use tax and the Indiana gross income tax, as applied in this case, both have been levied upon separate and distinct taxable events and do not constitute an unconstitutional burden on interstate commerce. In *Henneford v. Silas Mason Co.* (1937), 300 U.S. 577, 81 L. Ed. 814, 57 S. Ct. 524, the Supreme Court, in considering the Washington use tax on chattels purchased in another State, discussed the nature of the use tax. The court stated that the tax is not upon interstate commerce but upon the privilege of use after commerce is at an end. "The privilege of use is only one attribute, among many, of the bundle of privileges that make up property of ownership." (*Henneford v. Silas Mason Co.* (1937), 300 U.S. 577, 582, 81 L. Ed. 814, 818, 57 S. Ct. 524, 526-27.) In the opinion of this court in its first decision in the

present litigation (49 Ill. 2d 45), it was held that both the storage of the fuel in Illinois and its withdrawal from storage are taxable events that do not offend the commerce clause of the Federal Constitution. (49 Ill. 2d 45, 56.) The United States Supreme Court upheld this court's determination that the taxable event was the storage of the fuel and not its use in interstate commerce. It noted that a State in which storage facilities are maintained is likely to provide substantial services to those facilities. *United Air Lines, Inc. v. Mahin* (1973), 410 U.S. 623, 629-30, 35 L. Ed. 2d 545, 552-53, 93 S. Ct. 1186, 1190-91.

In *J.D. Adams Manufacturing Co. v. Storen* (1938), 304 U.S. 307, 82 L. Ed. 1365, 58 S. Ct. 913, the Indiana gross income tax, as applied in that case, was held invalid as a burden on interstate commerce. There the tax was levied on the gross receipts of a company 80% of whose sales were made and shipped to customers in other States and foreign countries. However, in *Department of Treasury v. Wood Preserving Corp.* (1941), 313 U.S. 62, 85 L. Ed. 1188, 61 S. Ct. 685, the sale was consummated and the delivery to the purchaser was made in Indiana. The gross income tax measured by the gross receipts on that transaction was held not to burden interstate commerce. The court distinguished *J.D. Adams Manufacturing Co. v. Storen,* pointing out that in that case the tax was on gross receipts derived from sales in other States and thus was laid upon receipts from sales made in interstate commerce. By contrast, in *Wood Preserving Corporation* the tax was upon gross receipts from a purely intrastate transaction. The fact that the purchaser immediately shipped the purchased material out of the State of Indiana would not alter the nature of the taxable event (receipt of income) as a purely local event. In *International Harvester Co. v. Department of Treasury* (1944), 322 U.S. 340, 88 L. Ed. 1313, 64 S. Ct. 1019, the court again considered

the Indiana gross income tax in relation to the prohibition of the commerce clause of the Federal Constitution. In each of the three situations considered in that case, the court found that a purely local transaction gave rise to the taxable event, which was separate and distinct from the transportation in interstate commerce.

Under the above authority we must conclude that under the facts of our case there were two separate and distinct taxable events upon which the local State could properly impose a tax: Shell's privilege of receiving income in Indiana and United's privilege of using the fuel by storage and withdrawal in Illinois. Although neither the Indiana tax nor the Illinois tax is a tax on the operations of commerce as such, we must consider whether the imposition of the Illinois use tax in this case constitutes a discrimination against items traveling in interstate commerce. Both a tax on the operation of commerce and a discrimination against it constitute interference with commerce. The prohibited burden on commerce is created by such interference. *Southern Pacific Co. v. Gallagher* (1939), 306 U.S. 167, 177-78, 83 L. Ed. 586, 593, 59 S. Ct. 389, 393-94.

The Supreme Court in *International Harvester v. Department of Treasury* declined to consider the question of multistate taxation. It was argued in that case that certain of the sales made by the Indiana company would be subject to double taxation because retail merchants in Illinois would be subject to the Illinois retailers' occupation tax even though the orders for the sales were accepted outside the State of Illinois and the property was transferred in another State. In reply to that argument, the Supreme Court simply said, "But it will be time to cross that bridge when we come to it." (*International Harvester Co. v. Department of Treasury* (1944), 322 U.S. 340, 348, 88 L. Ed 1313, 1319, 64 S. Ct. 1019, 1023.) The court did point out, however, that such a problem is not like that of

an attempted tax on the gross proceeds of an interstate sale by both the State of the buyer and the State of the seller, which the court had held in *J.D. Adams Manufacturing Co. v. Storen* violated the commerce clause. The court stated that the hand of the Indiana tax collector will not be withheld simply because the property purchased and delivered in Indiana and taken out of the State by the buyer may be the subject of a sales tax or a use tax in another State. Also, in *Henneford v. Silas Mason Co.* the Washington use tax under consideration specifically provided that it did not apply to the use of any article, the sale or use of which had already been taxed equal to the tax imposed by the Act. The Supreme Court noted that the exemption thus created applied to all transactions and not only to those on which the tax had been paid in Washington. It added, however, that by its discussion it did not imply that it was mandating that like allowances be made for taxes paid to other States. The court stated that if there are limits to the State's power in this regard "there is no need to mark them now. It will be time enough to mark them when a taxpayer paying in the state of origin is compelled to pay again in the state of destination." (*Henneford v. Silas Mason Co.* (1937), 300 U.S. 577, 587, 81 L. Ed. 814, 821, 57 S. Ct. 524, 529.) Thus in both of the above cases the Supreme Court declined to consider whether a tax imposed by both the State of the seller and the State of the buyer violated the commerce clause. The Supreme Court in *Southern Pacific* considered the application of the California use tax to items purchased outside the State. It noted that the California statute had no provision for a tax credit similar to that contained in the Washington statute considered in *Henneford*. Since the issue had not been raised, the court in *Southern Pacific* again declined to pass on the question of double taxation. However, after stating that discrimination against commerce or a tax on its operation constitutes

an interference with commerce, the court stated:

"A tax on property or *upon a taxable event in the state, apart from operation, does not interfere.* This is a practical adjustment of the right of the state to revenue from the instrumentalities of commerce and the obligation of the state to leave the regulation of interstate and foreign commerce to the Congress." (Emphasis added.) (*Southern Pacific Co. v. Gallagher* (1939), 306 U.S. 167, 178, 83 L. Ed. 586, 593, 59 S. Ct. 389, 394.)

These three cases indicate that each jurisdiction in which a local taxable event occurs in relation to goods shipped in interstate commerce, apart from the operation of commerce itself, may constitutionally impose a tax upon the taxable event that occurs within its borders.

We need not decide this issue solely on that basis. Here, United is not seeking credit against its Illinois use tax liability for the sales tax it paid in Indiana on the purchase of the fuel in question. That situation would present a question similar to that considered in the three cases above. The tax for which United is seeking credit here was not one imposed on it by law, but was assumed by it through its contract with Shell, who was lawfully obligated for the tax because it had received income from the sale of fuel to United in Indiana. Thus, United paid a tax in both Indiana and Illinois not because both jurisdictions had imposed the tax on it, but because it had voluntarily assumed the Indiana tax, which it was not obligated by law to do. The fact that United assumed payment of the Indiana tax does not make the Illinois use tax discriminatory. All United did was to assume that part of Shell's overhead attributable to the sale of fuel to United. This does not constitute a discrimination against commerce any more than would an assumption by United to pay a portion of Shell's Indiana real estate tax or any other item of Shell's overhead. See *Mann v. Schnarr* (1950),

228 Ind. 654, 667, 95 N.E.2d 138, 143.

We conclude that United is not entitled to a credit against its Illinois use tax liability under the provisions of section 3(c) of the Use Tax Act and that the failure to give such a credit does not discriminate against interstate commerce. The appellate court judgment is therefore reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MORAN and SIMON, JJ., took no part in the consideration or decision of this case.