CHICAGO TRIBUNE COMPANY, Plaintiff-Appellee, *v.* J. THOMAS JOHN-SON, Indiv. and as Director, Department of Revenue, *et al.*, Defendants-Appellants—(Rockwell Graphic Systems, Inc., Intervening Plaintiffs-Appellees).

First District (5th Division)   No. 82—2129

Opinion filed November 10, 1983.

Neil F. Hartigan, Attorney General, of Springfield (Paul J. Bargiel, Special Assistant Attorney General, of counsel), for appellants.

Reuben & Proctor, of Chicago (Don H. Reuben, William G. Schopf, Jr., William C. Schmidt, Andrew Butz, and Andrew H. Connor, of counsel), for appellees.

JUSTICE MEJDA delivered the opinion of the court:

Defendants, the Illinois Department of Revenue, the State Treasurer, and the Director of the Department of Revenue, appeal from the judgment of the circuit court which held that plaintiff, Chicago Tribune Company, met the statutory requirements for an exemption from the Use Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 439 *et seq.*), and that the monies which plaintiff had paid into a protest fund must be invested and the interest earned thereon paid to the prevailing party. Defendants seek reversal of both rulings. For the reasons which follow we reverse the judgment of the circuit court.

At issue is the proper construction of the Use Tax Act which provides, in part, that a "tax is imposed upon the privilege of using in this State tangible personal property ***." (Ill. Rev. Stat. 1981, ch. 120, par. 439.3.) Plaintiff has recently purchased several new printing presses and other machines for use in the printing of the Chicago Tribune. Neither party has questioned whether these machines are within the scope of the proviso imposing the use tax. Plaintiff asserts, and the circuit court held, that the machinery is not subject to use tax because it qualifies for the following statutory exemption:

> "The tax imposed by this Act does not apply to the use of machinery and equipment primarily in the process of the manufacturing or assembling of tangible personal property for wholesale or retail sale or lease ***." (Ill. Rev. Stat. 1981, ch. 120, par. 439.3.)

Defendants conceded at oral argument that plaintiff's machinery is used in "manufacturing or assembly," but they contend that the newspapers which result from that manufacturing process are not "tangible personal property" for sale or lease within the meaning of the exemption.

The circuit court's memorandum opinion contained an extensive factual discussion; the nature of our decision, however, obviates the need for a lengthy factual discourse in this opinion. It is sufficient to note that two witnesses testified to the various procedures which comprise the printing of the Chicago Tribune. The trial court found, as a matter of fact, that the publication of a newspaper results in "tangible personal property." Although the Use Tax Act does not define "tangible personal property," the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 400 et seq.) provides explicitly that "[t]he purchase, employment and transfer of such tangible personal property as newsprint and ink for the primary purpose of conveying news (with or without other information) is not a purchase, use or sale of tangible personal property." (Ill. Rev. Stat. 1981, ch. 120, par. 440.) The defendants urge that, as a matter of law, a newspaper is not "tangible personal property" for sale by virtue of the definition in the Retailers' Occupation Tax Act.

■ Before discussing the merits of this argument, we must consider the plaintiff's contention that the defendant Department of Revenue admitted in the trial court that individual Chicago Tribunes are tangible personal property. This assertion is based on a letter from the chief of the revenue litigation division of the Attorney General's office. This letter stated in relevant part that "this office is prepared at this time to stipulate only to paragraphs 1 through 4 and 43 through 50 of your proposed draft [stipulation]." Paragraph 50 of the proposed stipulation provided that "[e]ach item of machinery and equipment purchased by Tribune *** is used primarily in the production of *Chicago Tribunes*, which are tangible personal property." In our view, the "prepared to stipulate" language of the letter in question does not constitute a sufficiently definite agreement to stipulate to the proposed facts. (See *City of Rolling Meadows v. Kohlberg* (1980), 83 Ill. App. 3d 10, 16, 403 N.E.2d 1040; see also 34 Ill. L. & Prac. *Stipulations* sec. 2 (1958).) Accordingly, we conclude that no valid stipulation was entered into at the trial level. We will therefore consider the defendants' argument.

■ The defendants assert that the phrase "tangible personal property" is a term of art which has the same meaning wherever it is used. The plaintiff responds that the Use Tax Act and the Retailers'

Occupation Tax Act are two completely different statutes with entirely different purposes, and therefore a definition in one may not validly be applied to the construction of the other. The interrelationship between the Use Tax Act and the Retailers' Occupation Tax Act cannot be so easily dismissed, however. Our supreme court has held that the basic purposes of the Use Tax Act "are to complement the Retailers' Occupation Tax Act by preventing the evasion of tax on purchases made outside the State and to equalize the competitive disadvantage of Illinois retailers who face retailers' occupation tax liability. (*Illinois Road Equipment Co. v. Department of Revenue* (1965), 32 Ill. 2d 576, 580.)" (*United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 450, 419 N.E.2d 899; see also *American Airlines, Inc. v. Department of Revenue* (1974), 58 Ill. 2d 251, 252, 319 N.E.2d 28; *Howard Worthington, Inc. v. Department of Revenue* (1981), 96 Ill. App. 3d 1132, 421 N.E.2d 1030.) Plaintiff's argument focuses exclusively on the latter purpose, while disclaiming the legitimacy of the former. The supreme court has indicated, however, that the Use Tax Act and the Retailers' Occupation Tax Act together comprise a comprehensive legislative system for the taxation of the sale, purchase, and use of tangible personal property.

> "The Use Tax Act complements the Retailers' Occupation Tax Act in such a fashion so that an Illinois retailer who collects the use tax as an agent of the State is correspondingly relieved of his retailers' occupation tax liability on the transaction. [Citation.] On the other hand, purchasers who seek to avoid having the retailers' occupation tax liability passed on to them by buying goods outside the State face use tax liability on goods they bring into Illinois." (*United Airlines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 450-51, 419 N.E.2d 899.)

While this interrelationship is not of itself determinative of the question before us, it does provide a basis for rejecting the plaintiff's argument that the two statutes are independent of one another.

> " '*** Statutes which relate to the same thing or to the same subject or object are *in pari materia* although they were enacted at different times. It is a primary rule of statutory construction that not only should the intention of the legislature be deduced from a view of the whole statute and from its every material part, but statutes *in pari materia* should be construed together.' *People ex rel. Harrell v. Baltimore and Ohio Railroad Co.* 411 Ill. 55, 58 and 59." (*People ex rel. Nordstrom v. Chicago & North Western Ry. Co.* (1957), 11 Ill. 2d 99, 106, 142 N.E.2d 26.)

Because the Use Tax Act was enacted as a complement to the Retailers' Occupation Tax Act and because both statutes implement the legislature's plan for the taxation of transfers of tangible personal property, we conclude that the two statutes are *in pari materia.* Construing the two statutes together, we conclude that the legislative exclusion of newspapers from the definition of tangible personal property in the Retailers' Occupation Tax Act may be applied to define that same term in the Use Tax Act. (See *People ex rel. Scott v. Schwulst Building Center, Inc.* (1982), 89 Ill. 2d 365, 372, 432 N.E.2d 855.) Under the definition adopted by the legislature, plaintiff as a matter of law does not produce items of tangible personal property. Accordingly, plaintiff does not qualify for the exemption from the use tax.

■ We note that plaintiff's presentation in the trial court was designed to prove that individual copies of the Chicago Tribune were tangible items of personal property within the dictionary definition of those terms. But the legislature is not bound to follow commonly recognized meanings of terms or existing definitions created by persons in other fields. (*People v. McCarty* (1981), 86 Ill. 2d 247, 254, 427 N.E.2d 147.) When the legislature has defined a term, it is our duty to apply that definition and not some other which might appear to be more plausible.

Plaintiff contends that our construction of the statute is inappropriate in light of the legislative purpose of the exemption. Plaintiff relies on *Time Inc. v. Hulman* (1964), 31 Ill. 2d 344, 201 N.E.2d 374, in which our supreme court articulated the rationale of the newsprint exemption from the retailers' occupation tax as "to prevent discrimination against newspapers in favor of radio and television, which furnish news and other information, but do not transfer tangible personal property." (31 Ill. 2d 344, 351, 201 N.E.2d 374.) Plaintiff asserts that this same rationale applies to the use tax and that the exemption from that tax should be construed to apply to the newspaper business. Plaintiff's argument overlooks an important distinction between the use tax and the retailers' occupation tax, however. The latter tax is imposed on the transfer of tangible personal property; because the electronic media do not present information in a tangible form and the print media do so, the tax imposed on the transfer of tangible personal property would discriminate against the print media in the absence of an exemption. Interestingly, the exemption from the retailers' occupation tax does not provide that newspapers are exempt from the tax, but only provides that newspapers receive the same treatment as the electronic media:

"The purchase, employment and transfer of such tangible personal property as newsprint and ink for the primary purpose of conveying news *** is not a purchase, use or sale of tangible personal property." (Ill. Rev. Stat. 1981, ch. 120, par. 440.) In contrast to the retailers' occupation tax, the use tax is imposed on the use of tangible personal property. This distinction achieves significance in the context of the news media because, while the electronic media do not transfer information in a tangible form and the print media do, both forms of media utilize machinery to transmit that information. It is this machinery which is the subject of the use tax and, within the ambit of that tax, the differences in which the various media communicate information do not result in differential tax treatment. Accordingly, the rationale of *Time Inc. v. Hulman* is inapplicable to the instant case and does not, therefore, mandate the application of the exemption from use tax to plaintiff.

■ Plaintiff also contends that the principal objective of the legislature in enacting the use tax exemption for manufacture of tangible personal property was to encourage the expansion of industry within the State and to discourage the exodus of businesses from the State by exempting the purchase of manufacturing machinery from the use tax. Plaintiff argues that in order to implement this legislative purpose the exemption from the use tax should be construed to apply to sales of printing machinery and equipment to newspapers. The defendants point out that other industries which meet the letter of the exemption are subject to the Retailers' Occupation Tax Act, unlike plaintiff. Plaintiff responds that a more specific exemption in the Use Tax Act could have provided for an exemption for property which, when sold at retail, generates retailers' occupation tax liability. But our holding is not based on the defendants' formulation of the legislative rationale that an article must be subject to the retailers' occupation tax in order to qualify for the exemption from the use tax. Rather, we rely on the plain language of the definition excluding transactions of newsprint from the scope of the phrase "tangible personal property." (Ill. Rev. Stat. 1981, ch. 120, par. 440.) While plaintiff's argument derives some support from the apparent policy concerns of the statute, "a statute which exempts property from taxation should be strictly construed in favor of taxation and *** a party claiming an exemption has the burden to prove clearly and conclusively that he is entitled to the exemption. [Citation.] In determining whether an exemption is applicable, every presumption is against the intention of the State to exempt property from taxation." (*Telco Leasing, Inc. v. Allphin* (1976), 63 Ill. 2d 305, 310, 347 N.E.2d 729; see

also *United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 455-56, 419 N.E.2d 899.) Plaintiff's argument does not persuade us that the legislature intended to exempt its machinery from the imposition of the use tax.

■ Plaintiff next contends that our construction of the statute violates its rights under the first amendment to the United States Constitution. Defendants respond that this proposition was not argued to the trial court and is therefore waived. (See *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417.) "Nonetheless, the appellee may advance any argument supported by the record to sustain the judgment of the trial court [citation], and the reviewing court may affirm the trial court when justified in law for any reason [citation]." (*Ozment v. Lance* (1982), 107 Ill. App. 3d 348, 350, 437 N.E.2d 930.) Plaintiff's argument contemplates a legal determination not rebuttable merely by the introduction of evidence at trial. Our consideration of that argument in the absence of its presentation to the trial court (and the concomitant opportunity to introduce proof in opposition thereto) will not, therefore, prejudice defendants. (See *Sheldon v. Colonial Carbon Co.* (1983), 116 Ill. App. 3d 797, 803.) We will accordingly consider plaintiff's argument on its merits.

■ Plaintiff relies on the recent decision of the United States Supreme Court in *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue* (1983), 460 U.S. 575, 75 L. Ed. 295, 103 S. Ct. 1365. That case is inapposite to the instant case, however, because Minnesota "has not chosen to apply its general sales and use tax to newspapers. Instead, it has created a special tax that applies only to certain publications protected by the First Amendment." (460 U.S. 575, 581, 75 L. Ed. 2d 295, 302, 103 S. Ct. 1365, 1370.) The statute at issue in the case *sub judice* is a general statute which applies to all enterprises. While the legislature has exempted some areas of commerce from the provisions of the tax, the exemptions are not so pervasive that we could characterize them as rendering the proviso for taxation "facially discriminatory." (See 460 U.S. 575, 581, 75 L. Ed. 2d 295, 302, 103 S. Ct. 1365, 1370.) Accordingly, we conclude that our construction of the Use Tax Act does not infringe plaintiff's rights under the first amendment.

In summary, the exemption for manufacturing of tangible personal property does not apply to plaintiff because, as a matter of law, its operations do not produce tangible personal property. This holding does not conflict with the proscriptions of the first amendment. Because our holding provides an adequate basis for reversing the judgment of the trial court, we need not consider the defendants' argu-

ment concerning investment of the monies in the protest fund. For the foregoing reasons, the judgment of the circuit court is reversed.

Reversed.

WILSON, P.J., and LORENZ, J., concur.