(No. 59453.—

CHICAGO TRIBUNE COMPANY *et al.*, Appellants, v. J. THOMAS JOHNSON, Indiv. and as Director of Revenue, *et al.*, Appellees.

*Opinion filed April 19, 1985.*

64

Rueben & Proctor, of Chicago (Don H. Reuben, William G. Schopf, Jr., William C. Schmidt, Andrew Butz, and Andrew H. Connor, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Paul J. Bargiel, Special Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE WARD delivered the opinion of the court:

On July 19, 1982, the circuit court of Cook County held that the plaintiff, the Chicago Tribune Company (the Tribune), was exempt from liability under provisions of the Use Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 439.1 *et seq.*) on its purchase of machinery for a new printing facility. The appellate court reversed (119 Ill. App. 3d 270), and we granted the Tribune's petition for leave to appeal under Rule 315 (87 Ill. 2d R. 315).

On September 9, 1979, the Tribune announced the beginning of construction on its new printing facility in Chicago, which was to be known as the "Freedom Center." In that year, amendments to the Use Tax Act and to the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 440 *et seq.*) created an exemption for "machinery and equipment primarily [used] in the process of the manufacturing or assembling of tangible personal property for wholesale or retail sale or lease ***." (Ill. Rev. Stat. 1981, ch. 120, par. 439.3; Ill. Rev. Stat. 1981, ch. 120, par. 441.) In December 1979, the Department of Revenue (the Department) made public a proposed regulation which in substance provides that the process of printing did not constitute manufacturing, and that therefore a purchase of printing machinery would

not qualify for the "manufacturing machinery" exemption under the Use Tax Act and the Retailers' Occupation Tax Act. The proposed regulation was adopted on December 21, 1979, as an emergency rule (4 Ill. Reg. 99 (Jan. 4, 1980)), and later became a permanent regulation (86 Ill. Admin. Code sec. 130.330(b)(5)). Relying on the regulation, the Department claimed that the Tribune was liable for tax on the purchases of the printing presses and equipment that had been installed at the Freedom Center. The Tribune filed a complaint for "Injunction, Declaratory Judgment and Damages" in the circuit court of Cook County, asserting a right to the manufacturing-machinery exemption. In the interim, the Tribune paid the amount claimed under the disputed tax into a protest fund established by the circuit court.

The Tribune alleged in its complaint that it was engaged in "manufacturing." Much of the evidence introduced at the hearing described the operation of the Freedom Center. As stated, the court held that the Tribune's presses and equipment qualified for the sales and use tax exemption for manufacturing machinery and equipment.

In the appellate court, the Department abandoned its contention that pursuant to the regulation the presses were not considered as manufacturing machinery. Rather, the Department argued that printing presses did not produce "tangible personal property," and therefore the presses were not "machinery and equipment primarily [used] in the process of the manufacturing or assembling of tangible personal property ***." (Ill. Rev. Stat. 1981, ch. 120, par. 439.3.) The appellate court held that the Tribune's printing presses and equipment did not qualify for the manufacturing-machinery exemption and reversed the trial court.

The Retailers' Occupation Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 440 *et seq.*) taxes the occupation of

selling tangible personal property at retail. (*Illinois Cereal Mills, Inc. v. Department of Revenue* (1983), 99 Ill. 2d 9, 17.) The Use Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 439 *et seq.*) taxes the privilege of using tangible personal property within the State. (*United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 449.) Functionally, the Use Tax Act serves to tax property purchased out of State by Illinois residents that is not taxable under the Retailers' Occupation Tax Act or the tax act of another State. The Use Tax Act thus prevents the avoidance of the Retailers' Occupation Tax Act and at the same time attempts to eliminate the competitive disadvantage of in-State businesses. *United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 450; *Illinois Road Equipment Co. v. Department of Revenue* (1965), 32 Ill. 2d 576, 580; *Turner v. Wright* (1957), 11 Ill. 2d 161, *appeal dismissed* (1957), 355 U.S. 65, 2 L. Ed. 2d 106, 78 S. Ct. 140.

In 1961, the legislature amended the Use Tax Act and the Retailers' Occupation Tax Act by adding a provision which had the effect of exempting newspapers and periodicals from the taxes:

> "The purchase, employment and transfer of such tangible personal property as newsprint and ink for the primary purpose of conveying news (with or without other information) is not a purchase, use or sale of tangible personal property." (Ill. Rev. Stat. 1981, ch. 120, par. 439.2; Ill. Rev. Stat. 1981, ch. 120, par. 440.)

In 1979, the Retailers' Occupation Tax Act and the Use Tax Act were amended to add the described exemption for manufacturing machinery which is involved here. (Ill. Rev. Stat. 1981, ch. 120, par. 439.3; Ill. Rev. Stat. 1981, ch. 120, par. 441.) In 1981, the legislature enacted the "graphic-arts" amendment to the two acts, which exempted from taxation graphic-arts machinery and equipment, both new and used, including that equipment manufactured on special order, certified by the purchaser to

be used primarily for graphic-arts production. (Ill. Rev. Stat. 1981, ch. 120, par. 439.3; Ill. Rev. Stat. 1981, ch. 120, par. 441.) The parties agree that, through the graphic-arts amendment, printing presses are exempt from the retailers' occupation tax and use tax. The issue we must decide is whether the Tribune, before the graphic-arts amendment took effect, was entitled to the benefit of the manufacturing-machinery exemption.

The Department contends that the amendment, which exempts newsprint from the retailers' occupation tax and use tax, requires that newsprint, in legal effect, no longer be considered tangible personal property. Consequently, it says that printing presses do not qualify for the manufacturing-machinery exemption because the exemption is only for machinery that manufactures or assembles tangible personal property. The Tribune argues that the printing process constitutes the manufacturing of tangible personal property. It says that the meaning of "tangible personal property" is clear, and that in determining what constitutes "machinery *** primarily [used] in the process of the manufacturing *** of tangible personal property," the customary understanding of tangible personal property should be used. The Tribune contends, too, that the imposition of the tax would violate the first amendment and the equal protection clause of the fourteenth amendment of the Constitution of the United States.

It is of course fundamental that in statutory construction a court will seek to determine the legislative intendment. (*People v. Beam* (1979), 74 Ill. 2d 240, 242; *People v. Savaiano* (1976), 66 Ill. 2d 7, 15; *People v. Scott* (1974), 57 Ill. 2d 353, 358.) The legislative history or background of a statute may be instructive in ascertaining the intent of the legislature. (*People ex rel. Hanrahan v. White* (1972), 52 Ill. 2d 70, 73; *Bergin v. Board of Trustees* (1964), 31 Ill. 2d 566, 573; *People v. Boykin*

(1982), 109 Ill. App. 3d 112, 115.) It is appropriate to do so here to determine whether the legislature, in light of the newsprint exemption, intended that printing presses were to be considered "machinery *** primarily [used] in the process of the manufacturing *** of tangible personal property."

The legislative background of the manufacturing-machinery exemption indicates that printing presses were not intended to be included in the exemption. House Bill 1596 was introduced to clarify a number of ambiguities in the manufacturing-machinery exemption. (See 81st Ill. Gen. Assem., Transcript of House Proceedings, June 29, 1979, at 235.) When House Bill 1596 was received in the Senate, an amendment to it was proposed which would have added a provision that exempted "press equipment designed and used for producing newspapers or other periodicals that have the primary purpose of disseminating news to the public." (81st Ill. Gen. Assem., Transcript of Senate Proceedings, June 19, 1979, at 47.) During the debate on the suggested amendment in the Senate, Senator Regner observed:

> "What [the proposed amendment] does, it provides a tax incentive for printing equipment. It would help the newspapers. I see no reason why we should help the newspapers out and I urge you to defeat the amendment." (81st Ill. Gen. Assem., Transcript of Senate Proceedings, June 20, 1979, at 275.)

This indicates that the intention had not been to exempt news printing presses at the time the manufacturing-machinery exemption was enacted. The proposed amendment, which would have exempted newspaper printing presses, was defeated by a vote of 23 to 3. (81st Ill. Gen. Assem., Transcript of Senate Proceedings, June 20, 1979, at 275.) Later in the House, Representative Flinn, sponsor of House Bill 1596, stated that he had "refused to permit the Senate to put on the printer's amend-

ment." (81st Ill. Gen. Assem., Transcript of House Proceedings, June 29, 1979, at 238.) Debates on the graphic-arts amendment also confirm that the legislative intent had not been to exempt presses. Representative Bowman, in unsuccessful opposition to the graphic-arts bill, commented:

> "Ladies and Gentlemen of the House, we are being eaten alive by the manufacturers sales tax exemption as it is and this would expand that exemption by 22.4 million dollars in fiscal year 83." (82nd Ill. Gen. Assem., Transcript of House Proceedings, July 1, 1981, at 204.)

The reference to the proposed expansion of the manufacturing machinery exemption to include printing presses, of course, indicates that, as of then, they were not within the exemption.

The Tribune makes two constitutional claims. We observe initially that "a statute enjoys a strong presumption of constitutionality [citation], and the burden of showing invalidity is on the party challenging the enactment." (*People v. La Pointe* (1981), 88 Ill. 2d 482, 499.) It is contended that the imposition of the tax would violate the equal protection clause of the fourteenth amendment (U.S. Const., amend. XIV). The Tribune says that the State may not tax its machinery differently from that of other "manufacturers." The equal protection analysis relevant here is whether there exists a rational relationship between the classification and the purpose for which it was enacted. (See *Allied Stores v. Bowers* (1959), 358 U.S. 522, 526-27, 3 L. Ed. 2d 480, 484-85, 79 S. Ct. 437, 440-41; *Fiorito v. Jones* (1968), 39 Ill. 2d 531; J. Nowak, R. Rotunda & J. Young, Constitutional Law 361-65 (1978).) In articulating the constitutional requirements for tax exemptions, the court in *Fiorito v. Jones* (1968), 39 Ill. 2d 531, first recognized that "the legislature has broad power to establish reasonable classifications in defining subjects of taxation. (39 Ill. 2d

531, 535.) In exercising this power, the legislature "may define a general class which is subject to an occupation tax and then specifically remove a subclass." (39 Ill. 2d 531, 535.) Those classifications, however, "must be based upon real and substantial differences between persons taxed and those not taxed [citation], and they must bear some reasonable relationship to the object of the legislation [citation], or to public policy." (39 Ill. 2d 531, 535-36.) Newspaper publishers differ from other manufacturers because the legislature has made their product, newsprint, not subject to the retailers' occupation tax and use tax. Thus, they enjoy a benefit that other manufacturers have not been given. The purpose of the exemption is to attract new manufacturing facilities to our State and to discourage existing ones from relocating outside Illinois. (See 81st Ill. Gen. Assem., Transcript of Senate Proceedings, June 19, 1979, at 49.) There is a rational relationship between the scope of the manufacturing-machinery exemption and the purpose for which it was enacted.

The Tribune argues, too, that the imposition of the tax violates the freedom which is assured the press by the first amendment to the Constitution of the United States. It contends that its situation is identical to the one considered in *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue* (1983), 460 U.S. 575, 75 L. Ed. 2d 295, 103 S. Ct. 1365, where the Supreme Court invalidated a use tax. But the tax there was specifically directed at newspapers and other publications. It was a use tax on publications based on the cost of paper and ink "consumed in the production of a publication." Though the tax rate was lower than that of the general use tax from which newspapers were exempt, the court held that because the tax was enacted exclusively for newspapers, it created a censorial threat in violation of the first amendment.

The tax in *Minneapolis Star* was limited to publications; the use tax here applies to all tangible personal property, including printing presses. Printing presses have been subject to the use tax since the tax statute was enacted in 1955. (1955 Ill. Laws 2027.) The legislature's decision in 1979 to exempt certain machinery from the tax to encourage the State's industrial development did not render the tax statute unconstitutional when applied to printing presses for the years 1979-81. The enactment of the graphic-arts amendment in 1981 did not affect the constitutionality of the previous tax scheme in which the presses were subject to tax, anymore than the exemption of newsprint in 1961 rendered the previous taxation of newsprint unconstitutional.

For the reasons given, the judgment of the appellate court is affirmed, and the cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Affirmed and remanded.*

JUSTICE SIMON, dissenting:

I believe the majority's conclusion is inconsistent with the plain meaning of the applicable use and sales taxes. It is clear that printing presses are machinery and equipment primarily used in the process of manufacturing or assembling, and they therefore meet the first definitional requirement for the manufacturing-machinery exemption. In fact, as the majority points out, the revenue department has abandoned its original position that printing presses are not manufacturing machinery. It has also abandoned its reliance on its emergency rule adopted on December 21, 1979, which later became a permanent regulation, that manufacturing does not include the process of printing.

This would end the case, and the manufacturing-machinery exemption would relieve the taxpayer of the con-

tested use tax, had the revenue department not shifted
its position during the course of this litigation to argue
that the exemption does not apply because a newspaper
is not "tangible personal property for wholesale or retail
sale" within the meaning of this provision. There is no
doubt, however, that newspapers fall within the category
of tangible personal property as that term is commonly
understood, just as books and paintings do. For example,
a person who owns a copy of the famous *Tribune* head-
line declaring Thomas E. Dewey the victor in the 1948
presidential election would certainly regard it as a valu-
able piece of tangible personal property.

The fact that the legislature has decided in another
provision that the sale of newspapers should not be sub-
ject to a tax does not change a newspaper from "tangi-
ble personal property" as that term is used in the manu-
facturing-machinery exemption into something else. The
language used in the two provisions is different; hence,
there is no valid basis for concluding that because news-
papers are specifically exempted from the sales tax, they
are also excluded from the term "tangible personal prop-
erty" as used in the manufacturing-machinery exemp-
tion. The latter exemption by its terms applies to the
"manufacturing or assembling of tangible personal prop-
erty *for wholesale or retail sale or lease.*" (Emphasis
added.) (Ill. Rev. Stat. 1979, ch. 120, par. 439.3.) The
provision exempting the sale of newspapers, on the
other hand, first refers to newsprint and ink as "tangi-
ble personal property" and then exempts the purchase of
"newsprint and ink for the primary purpose of convey-
ing news" by directing that such a transfer *"is not a
purchase, use or sale of tangible personal property."*
(Emphasis added.) Ill. Rev. Stat. 1981, ch. 120, par. 440.

The purpose of the latter provision was only to ex-
clude newspapers from taxation as retail sales by the de-
vice of declaring that such a transfer is not a sale of per-

sonal property. Nothing in the wording of this exemption either commands or justifies its application as a definition of "tangible personal property" which excludes newspapers wherever that term is used in the tax statutes. Moreover, the use of different language surrounding that term suggests it has different meanings in the two contexts. Reading into the manufacturing-machinery exemption the dissimilar language of the newspaper-sales exemption leads to a construction of the former provision which is contrary to its plain meaning. The newspaper-sales exemption confers upon newspapers a status that is, of course, contrary to reality. It is illogical and unwarranted to carry that status over to another provision adopted 18 years later, designed for a different purpose, dealing with different subject matter and using the term "tangible personal property" in a completely different context, absent a clear directive from the legislature.

I find nothing irregular or unacceptable in a taxing scheme that exempts newspapers from a sales tax while at the same time exempting the printing presses that produce them from a use tax. That is the legislature's prerogative and, as I read the statutory provisions, it has expressed that choice in clear and unambiguous language.

Because the statutory provisions applicable here are clear and unambiguous, they should be given effect without resort to other aids for construction. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475-76.) It is therefore improper to consider the statements of two members of the General Assembly referring to a defeated amendment to House Bill 1596 to determine whether the legislature intended that printing presses qualify for the manufacturing-machinery exemption. The statutory language itself is the best indication of the intent of the drafters. (89 Ill. 2d 469, 475.) In any event, the statements on

which the majority relies do not indicate any legislative intent, and thus neither require the interpretation of the manufacturing-machinery exemption which the majority applies nor even lend support to that interpretation.

As the majority points out, the defeated amendment would have added a provision to the manufacturing-machinery exemption covering "press equipment designed and used for producing newspapers or other periodicals that have the primary purpose of disseminating news to the public." (106 Ill. 2d at 70.) There is no certainty, however, that the observations of Senator Regner and Representative Flinn express what motivated the majority of the senators who voted against the amendment. Those who voted "against" may have done so believing the amendment unnecessary because the manufacturing-machinery exemption clearly included news-printing presses. Representative Bowman's statement in opposition to the graphic-arts bill is also inconclusive, for if printing presses were already included in the manufacturing-machinery exemption, they could hardly contribute to the expansion of the exemption to which Representative Bowman was referring.

Moreover, the enactment of the graphic-arts bill does not support the conclusion that it provided an exemption for printing presses which did not previously exist. The graphic-arts amendment (Ill. Rev. Stat. 1981, ch. 120, par. 439.3) was enacted in the next session of the legislature after the revenue department adopted its emergency rule on December 21, 1979, which later became a permanent regulation, declaring that printing machinery did not qualify for the manufacturing-machinery exemption. Under these circumstances, the graphic-arts bill should be regarded as interpretive and a reaffirmation of existing legislation, designed to correct an erroneous administrative interpretation placed on the statute by the revenue department. (*Bruni v. Department of Registra-*

*tion & Education* (1974), 59 Ill. 2d 6, 11-12; *People ex rel. Spitzer v. County of La Salle* (1960), 20 Ill. 2d 18.) Thus, such directive as we have from the legislature can be regarded as contrary to the conclusion the majority reaches.

The legislative comments on which the majority appears to place sole reliance for its holding are, in my judgment, neither helpful nor appropriate in reaching the proper result in this case. Rather, applying the statutory provisions in accordance with their clear and plain meaning leads to a resolution of this appeal in favor of the taxpayer without the need to consider either the inconclusive comments of three members of the General Assembly or the constitutional arguments the taxpayer has advanced.