FRANCISCO BERRIOS, Plaintiff-Appellant, v. RAY J. RYBACKI et al., Defendants-Appellees.

First District (2nd Division)   No. 1—88—2918

Opinion filed October 24, 1989.

Thomas R. Challos, Jr., and Marshall E. Winokur, both of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Valerie J. Peiler and Michael Brennan, Assistant Attorneys General, of Chicago, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff appeals from an order of the circuit court denying his motion for summary judgment and granting summary judgment for defendants on plaintiff's complaint seeking a declaration that certain directives adopted by the Illinois Industrial Commission (Commission), and its chairman, Ray J. Rybacki (chairman), were void, among other claims for relief. Plaintiff's theory is that the directives were, in fact and in law, rules adopted contrary to the provisions of the Illinois Administrative Procedure Act (APA) (Ill. Rev. Stat. 1987, ch. 127, par. 1001 *et seq.*).

The principal issues presented on review include whether: this appeal should be dismissed because plaintiff lacks standing to challenge the directives in view of plaintiff's settlement of his underlying worker's compensation claims;[1] the procedures promulgated by the chairman and adopted by the Commission were actually "rules" under the APA, thereby subjecting them to the requirement of notice, comment or hearing and publication; and defendants' motion for summary judgment should have been denied because the motion was not free from doubt.

In late 1985 and early 1986, plaintiff Francisco Berrios, received injuries while in the scope of his employment at General Mills. In June and September 1986, he filed applications for adjustment of his

---

[1]Plaintiff's worker's compensation claims were dismissed for want of prosecution by an Industrial Commission arbitrator because of plaintiff's failure to follow certain of the newly created procedural directives, which are at issue in this appeal.

claims with the Commission pursuant to the Worker's Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.* (Act)).

The claims, consolidated on October 14, 1986, were scheduled for trial on October 23, 1987, before a Commission arbitrator, who dismissed the claims for want of prosecution when plaintiff and his attorneys failed to appear before her between the hours of 8:45 a.m. and 9:15 a.m. in order to take part in a new procedure denominated the "trial order drawing." The arbitrator told plaintiff's counsel that she was acting according to what were labelled by the Commission as the "Chicago Arbitration Rules" (Chicago Rules), made effective on October 1, 1987,[2] and made effective statewide as of January 1, 1988. These rules were not filed with the Secretary of State, nor set for comment or hearing, nor were they published in the Illinois Register pursuant to the APA, according to the chairman.

Plaintiff took no action to refile or reinstate his claims, or to appeal the dismissals to the Commission, although those options were available. Instead, he brought this circuit court action against the chairman and the Commission (sometimes collectively defendants), seeking: (1) a declaration that the Chicago Rules were void because they were not promulgated in accordance with the APA; (2) a declaration that the dismissal for want of prosecution of plaintiff's claim be declared null and void, and that his claim be reinstated and assigned to another arbitrator; (3) a declaration that all other petitioners' applications for adjustment of claims that were dismissed on or after October 1, 1987, be reinstated and reassigned; (4) a temporary or permanent injunction restraining defendants from attempting to enforce the invalid rules in the future absent compliance with the APA; (5) a temporary or permanent injunction against the Commission to prevent it from acting under the Chicago Rules until it complies with the APA; and (6) costs and fees.

Although reference is made in the briefs to plaintiff's lawsuit as a class action, no allegations are set forth in his complaint as to any proposed class, or applicability or statutory prerequisites (Ill. Rev. Stat. 1987, ch. 110, pars. 2—801 through 2—806); however, in his prayer for relief he does ask:

"For a declaratory judgment declaring that all other petition-

---

[2]This new requirement (Chicago Rule 4), directed each arbitrator, during his or her trial cycle, to conduct a trial order drawing between 8:45 a.m. and 9:15 a.m. for that day's trials. If the said number drawn is called for trial and petitioner's attorney is not present, counsel for respondent may request a continuance, or move for dismissal, subject to the arbitrator's approval. If respondent's counsel is absent, petitioner may proceed *ex parte* or request a continuance.

ers' applications for adjustment of claim, that were dismissed on and after October 1, 1987 be reinstated and randomly reassigned to other Arbitrators for trial, and that said matters be set for trial within 60 days after said reassignment."

Extensive discovery subsequently was undertaken. During his deposition, the chairman explained that the new procedures were created to effectuate a "degree of uniformity which would allow all the parties, petitioners, respondents and their counsel or pro se petitioners to move expeditiously and keeping with the spirit of the act through the Commission." The chairman alluded to the fact that there was no established procedure followed by each arbitrator and that few, if any, rules were actually reduced to writing. He stated that none of the other commissioners were consulted with regard to the proposed rules.

The chairman also indicated that the new procedures were made "available" in writing in September 1987 to attorneys at a seminar, and also at the Commission's office. The chairman was familiar with the Illinois Administrative Code (Code) and its prescribed procedures for prearbitration, and averred that the Chicago Rules do not amend sections 7020 or 7030 of the Code (50 Ill. Adm. Code §§7020, 7030 (1985)), but were meant to "amplify and give direction to the arbitrators" as they applied the rules of arbitration.

Defendants moved for summary judgment, arguing that the Chicago Rules were not "rules" whose adoption required compliance with the APA, and that even if the procedures were "rules" under the APA, they fell within the exemption for rules concerning an agency's internal management.

Plaintiff filed a cross-motion for summary judgment on the question of liability, contending that there were no questions of material fact that would preclude judgment for plaintiff; the Chicago Rules, as a matter of law, could not be said to fall within the internal management exception; and any subsequent granting of summary judgment for defendants would be in error since the issue regarding the status of the rules was not clear and free from doubt.

On August 31, 1988, the circuit court granted defendants' motion for summary judgment, finding that the chairman is charged with implementing the purpose and objectives of the Act and possessed the authority to issue directives as to the internal management of the Commission in a manner consistent with existing rules and statutes. Plaintiff's motion for reconsideration was denied. Plaintiff appeals from both orders.

I

Defendants contend that this appeal should be dismissed for a number of reasons. At the outset, they challenge plaintiff's standing to question the validity of procedures other than those utilized in his case. The crux of their argument is that since the application only of Chicago Rules 5 and 12 could have caused any injury to plaintiff, only those rules can be the subject of any subsequent litigation. Defendants assert, therefore, that the validity of the remaining rules or procedures cannot be challenged by this plaintiff.

█▌ █ Standing requires "some injury in fact to a legally cognizable interest." (*Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 492, 524 N.E.2d 561.) Specifically, in an action for declaratory relief, there must be "an actual controversy" between adverse parties; and the party requesting the declaration must possess some "personal claim, status, or right which is capable of being affected by the grant of such relief." (*Greer v. Illinois Housing Development Authority*, 122 Ill. 2d at 493.) Here, although plaintiff's claims were dismissed pursuant to Chicago Rules 5 and 12, other rules in question adopted by defendants at the same time impact upon this cause generally, as argued by plaintiff and as will be noted presently. The adoption of these other rules followed the same procedures or lack thereof; they purport to fulfill the same need for uniformity; and they, too, are claimed to fall within the internal procedures exemption.

Defendants next contend that this action has been rendered moot by plaintiff's subsequent settlement of his claims under the Act. They insist that since plaintiff's ultimate legal interest was to receive compensation for his injuries, the settlement he received satisfied all the legal rights and interests in a fair adjudication given to him under the Act, thus making the issues moot.

█▌ Plaintiff concedes the settlement of his claims, but argues that the only claim for relief mooted by his settlement is his claim for reinstatement of his case. A case is moot, however, where an actual controversy ceases to exist. (*Wheatley v. Board of Education* (1984), 99 Ill. 2d 481, 484-85, 459 N.E.2d 1364.) Any judgment rendered under this factual scenario ordinarily could have advisory effect only. (See *Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231, 235, 437 N.E.2d 638 (discussion on advisory opinions).) Further, courts generally will not review cases merely to establish a precedent or guide for future litigation. (*La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 121 N.E.2d 486; *Madison Park Bank v. Zagel*, 91 Ill. 2d at 235.) Plaintiff's sole personal basis for challenging

the validity of the rules is grounded in the adjustment of his claims; upon their settlement, his standing to have the rules declared null and void ceased to exist as to his personal claim. Therefore, the issues as to his individual claim are moot.

■ Plaintiff urges, however, that exceptions to the mootness doctrine be applied, namely, the existence of a substantial public interest in the controversy (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 622-23, 104 N.E.2d 769), or issues likely to recur, but unlikely to last long enough to insure appellate review. (*Wheatley v. Board of Education*, 99 Ill. 2d at 485.) We need consider only the first exception. Whether a sufficient level of public interest exists requires three elements to be analyzed: (1) the public nature of the question presented; (2) the need for an authoritative determination for the future guidance of public officials; and (3) the likelihood of recurrence of the question. *People ex rel. Wallace v. Labrenz*, 411 Ill. at 622; *Kohan v. Rimland School for Autistic Children* (1981), 102 Ill. App. 3d 524, 430 N.E.2d 139; *Morrison v. Chicago Board of Education* (1989), 188 Ill. App. 3d 588.

■ The issue of whether the directives are "rules" within the APA is a public question which concerns all employees and employers pursuing or defending claims before the Commission. The circuit court itself found, in its final order, "that the issues raised in Plaintiff's complaint involve matters of Public Importance and are of First Impression." The motives of the chairman and of the Commission for issuing the directives may be praiseworthy; however, the legality of their actions must be determined so that, if illegal, they can be corrected. The probability indeed exists that another petitioner may challenge the validity of the Chicago Rules by reason of a dismissal. The need for judicial review of the agency's actions being clear, this case transcends plaintiff's personal claim and falls within the public interest exception to the doctrine of mootness. We will consider the remaining issues raised solely from the standpoint of the public interest.

## II

■ Are the Chicago Rules "rules" within the meaning of the APA? The definition of "rule" for purposes of the APA is as follows:

> "Rule means each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy, but does not include (a) statements concerning only the internal management of an agency *and not affecting private rights or procedures available to persons or entities outside*

*the agency* \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 127, par. 1003.09.)

If the Chicago Rules fall within the foregoing definition and outside the prescribed exceptions, they should have been published in the Illinois Register, with notice to the public, comments invited or hearings held, and filed with the Secretary of State. Ill. Rev. Stat. 1987, ch. 127, pars. 1005, 1005.01.

Defendants assert that the Chicago Rules do not meet the APA definition since they did not implement, apply, interpret or prescribe law or policy, but merely govern the internal management of the Commission. We disagree.

█ Applying the APA definition of "rule" to the case at bar, it is clear that several of the directives impacting upon this case affected private rights and procedures of persons outside the agency. In *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029, our supreme court extensively examined the APA definition and found that the Department of Public Aid attempted to amend the rate at which it compensated nursing homes for the care of indigent citizens by issuing an "amended inflation-update procedure," which "affect[ed] the rights and procedures available to people and entities outside the agency" (*Senn Park*, 104 Ill. 2d at 178), namely, the right of nursing homes to be compensated for their services. Here, the intended effect upon others outside the agency is illustrated, in part, by the following exchange between counsel and the chairman, which occurred during the chairman's deposition:

"Q. So that these rules are promulgated by you *to aid and assist the employers of this state as well as the employees of this state who have claims against the employers*; is that your goal here?

A. *That's the principal goal and obviously to fit these into the practice of law by individuals who, of course, represent the bulk of people who appear before the Commission.*

\* \* \*

Q. Do the [Chicago] rules \*\*\* affect all employees as well as all employers in Cook County, Illinois on and after October 1, 1987 who are governed by the Illinois Worker's Compensation Act?

A. Well, they don't affect—please, I mean they don't affect all employees and all employers. *They affect all existing cases.*

Q. *Okay. In other words, people who have claims or defending claims under and pursuant to the Illinois Worker's Compensation Act?*

A. *Yes.*" (Emphasis added.)

The difficulty with this case is that the chairman's directives not only dictated an internal method for maintaining consistency among the arbitrators who hear worker's compensation claims, but also had a substantial effect on the rights and obligations of persons outside the agency.

Rules governing prearbitration and arbitration proceedings before the Commission, prior to the adoption of the Chicago Rules in 1987 and 1988, were to be found in the Illinois Administrative Code, volume IV, title 50, sections 7020 and 7030 (Code). There is no question but that the prior rules had been adopted pursuant to the notice, response or hearing and publication requirements of the APA.

According to the evidence adduced through discovery, the manner in which a case came to trial prior to October 1, 1987, and how it comes to trial under the Chicago Rules is particularly significant. Prior to the Chicago Rules, arbitrators heard motions five days per week, each week of the month. A case less than three years old, but ready for trial, could be placed on the arbitrator's motion book for a hearing to set a trial date. Notice of motion was sent to opposing counsel by mail 72 hours before the motion for trial was to be heard along with a form called "Request for Hearing." Upon agreement between counsel at the time the motion was heard that the case should be tried, the arbitrator would pretry the case in accordance with section 7030.20. Parties were given the opportunity to settle their differences at these pretrial hearings. A case not disposed of at the pretrial conference would then be set for trial within 30 to 60 days thereafter. Under the new Chicago Rules, however, there is no provision for pretrial conferences other than for section 19(b—1) cases (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(b—1) (emergency hearings in certain circumstances)). Chicago Rules 7, 8.

Pretrial disposition by settlement between the parties is a valuable right which litigants are encouraged to pursue as a matter of public policy, not only from the perspective of the litigants, but also from the standpoint of the administration of justice (see, *e.g., Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 122, 499 N.E.2d 1373). Although the present proceeding involves administrative proceedings, the policy of promoting settlements is the same (*Ahlers v. Sears, Roebuck Co.* (1978), 73 Ill. 2d 259, 264, 383 N.E.2d 207; *Hartford Accident & Indemnity Co. v. Illinois Industrial Comm'n* (1926), 320 Ill. 544, 546, 151 N.E.2d 495). Indeed, all settlements are required to come under the Commission's scrutiny and to receive its approval. (Ill. Rev. Stat. 1987, ch. 48, par. 138.23.) The fact that the

present case was finally settled illustrates the point. Impingements upon opportunities to foster, encourage and approve settlements are not mere internal procedures, but clearly affect private rights. Public notice, input and publication could have aided the Commission and the chairman in considering this effect and perhaps suggested alternatives to this proposed procedure.

Prior to the adoption of the Chicago Rules, the evidence shows, cases could be tried five days per week and every week of each month. Chicago Rule 19 limits trial dates to the two-week period (10 working days) following the monthly status call. Under Chicago Rule 2, arbitrators hear motions but one day per month, after the trial status call. A case not on the preprinted arbitrator's monthly trial status call, as prepared by the Commission, cannot be subject to a motion to set for trial. The new system requires further that section 19(b—1) (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(b—1)) cases be heard during the first two trial dates for each arbitrator, and, under Chicago Rule 14, once such a case is started, it must be concluded during the next 10-day hearing cycle. Should claimants in other cases draw trial dates on which a continuing section 19(b—1) trial is being conducted, the non-section 19(b—1) cases must be continued, according to the evidence, for 90 days, with whatever concomitant disadvantages such delays may have to bear. Whether such delays are prejudicial or tolerable, or in the best interest of the administration of justice, or not, the potential result is surely not an internal matter alone, but clearly impacts upon the rights of private parties substantially, to say nothing of scheduling difficulties which may be experienced by counsel.

A case set for trial during the new 10-day trial cycle requires the appearance of counsel on the date the case is set. Under Chicago Rules 4 and 5, each case to be tried that day is to be selected between 8:45 a.m. and 9:15 a.m. Failure of counsel to appear during that period of time subjects the case to be dismissed. Before the advent of the Chicago Rules, there was no procedure such as a trial drawing. All cases subject to trial on a particular date were called from the arbitrator's motion book, and both sides would appear and answer ready for trial or seek a new date. The evidence shows that arbitrators had the discretion to undertake the hearing of a case that day, upon good cause shown by counsel, even when the parties appeared after the call was completed. Although five minutes late, counsel for the petitioner in the present case was denied his hearing and his case was dismissed for having missed the number drawing period prescribed by Chicago Rules 4 and 5. Discretionary language

in those rules is regarded as absent, according to the arbitrator, a result transcending internal rulemaking.

As the foregoing analyses of the several directives at issue reveal, they did indeed alter the rights and interests of parties outside the agency. The fact that the Chicago Rules may be beneficial to and could possibly enhance procedures followed in prearbitration and arbitration practice before the Commission cannot be gainsaid, and plaintiff concedes the potential salutary effect some of them may have. Nevertheless, it is the failure to pursue proper notice, comment or hearing and publication requirements of the APA in the adoption of the Chicago Rules that requires their invalidation. The public should have been given an opportunity to participate in the rulemaking process, thereby enabling the Commission to apprise itself of potential problems before establishing new rules. See *Batterton v. Marshall* (D.C. Cir. 1980), 648 F.2d 694, 704. See also new Supreme Court Rule 3 (134 Ill. 2d R. 3).

Defendants' reliance upon *Donnelly v. Edgar* (1987), 117 Ill. 2d 59, 509 N.E.2d 1015, and *Mobil Oil Corp. v. Johnson* (1982), 93 Ill. 2d 126, 442 N.E.2d 846, is misplaced. In *Donnelly*, the supreme court gave the internal management exception a narrow construction, but found the challenged directive to be an explanation of existing policy, unlike the effect of the Chicago Rules in the present case. The *Mobil* opinion, which predated the supreme court opinion in *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029, found that an interagency memorandum dispelling previously existing confusion on the issue of taxability of refinery fuels was not a rule subject to the APA requirements of notice and hearing. No analogous situation is found in the present case.

### III

■ Finally, plaintiff asserts that summary judgment for defendants was improperly granted and that the circuit court erred in denying his motion for summary judgment. The construction of a statute is a question of law. (*Oberman v. Byrne* (1983), 112 Ill. App. 3d 155, 160, 445 N.E.2d 374.) Because the case turns on the definition of "rule" under the APA, pure questions of law were presented to the circuit court. Summary judgment is proper when an issue is determinable solely as a matter of law. *Smith v. Rengel* (1981), 97 Ill. App. 3d 204, 422 N.E.2d 1146.

■ The circuit court erred in granting defendant's motion for summary judgment. That judgment is reversed with directions to enter summary judgment in plaintiff's favor, solely as it relates to the

public interest. Upon remand, the circuit court should consider the necessity for entering orders restraining the enforcement of the Chicago Rules locally and statewide and for such further relief as may be necessitated under plaintiff's complaint. Since we have found the issues as to plaintiff's personal action moot, no further consideration need be given his claim.

Reversed and remanded with directions.

SCARIANO and DiVITO, JJ., concur.