FRANCISCO A. BERRIOS, Plaintiff-Appellee, v. RAY J. RYBACKI, Chairman, The Industrial Commission, *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 1—91—0685

Opinion filed September 29, 1992.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, of counsel), for appellants.

Thomas R. Challos, Jr., and Marshall E. Winokur, Ltd., both of Chicago (Thomas Challos and Marshall Winokur, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

The Illinois Industrial Commission, chairman, members and an arbitrator (collectively Commission) appeal the circuit court's award of attorney fees to plaintiff's lawyers for having successfully secured the invalidation by this court of an administrative rule in *Berrios v. Rybacki* (1989), 190 Ill. App. 3d 338, 546 N.E.2d 651, *appeal denied* (1990), 129 Ill. 2d 561.

The Commission questions whether a multiplier may be applied to calculate the attorney fees awarded under the Illinois Administrative Procedure Act (APA) (Ill. Rev. Stat. 1987, ch. 127, par. 1001 *et seq.*) and, assuming *arguendo* that the application of a multiplier is permissible under the APA, whether it was an abuse of discretion to utilize a multiplier in this case. Also challenged is the circuit court's exercise

of discretion in allowing allegedly duplicate hours and an hourly rate above that usually charged by plaintiff's attorneys.

Francisco A. Berrios, plaintiff, was injured while employed in late 1985 and early 1986. He filed two worker's compensation claims with the Commission. The claims were consolidated and scheduled for trial on October 23, 1987, before a Commission arbitrator. The latter dismissed the claims for want of prosecution when plaintiff and his attorneys failed to appear before her between 8:45 a.m. and 9:15 a.m. in order to take part in a new procedure called "trial order drawing." The arbitrator told plaintiff's counsel she was acting under the Commission's "Chicago Arbitration Rules" (Chicago Rules).

Plaintiff did not refile or reinstate his claim, nor did he appeal the dismissals to the Commission. Instead, on November 12, 1987, he filed a declaratory judgment action against the chairman of the Commission, several commissioners and the arbitrator, challenging the Chicago Rules' validity, and claiming the rules were adopted contrary to the procedures prescribed by the APA. Plaintiff also asserted that if the Chicago Rules were invalidated, he should be awarded reasonable costs and attorney fees under then designated section 14.1(b) of the APA. Ill. Rev. Stat. 1987, ch. 127, par. 1014.1 (section 14.1(b)) (now Ill. Rev. Stat. 1991, ch. 127, par. 1010—55(c)).

Following extensive discovery, the Commission moved for summary judgment, arguing that the Chicago Rules were not "rules" the adoption of which required compliance with the APA and that even if the procedures were "rules" under the APA, they fell within the exception for rules concerning an agency's internal management. In deciding cross-motions for summary judgment on August 31, 1988, the circuit court granted the Commission's motion for summary judgment. The court found that the chairman was authorized to issue Commission internal management directives in a manner consistent with existing rules and statutes, of which the directive at issue was one.

Plaintiff appealed. While his case was pending, he settled his worker's compensation claim. On appeal, this court agreed that plaintiff's individual challenge to the Chicago Rules became moot upon settlement; however, we permitted the appeal to proceed under the public interest exception to mootness. (*Berrios*, 190 Ill. App. 3d at 344.) We reversed, finding the internal management exception applied only to agency statements not affecting private rights or procedures available to persons or entities outside the agency. (*Berrios*, 190 Ill. App. 3d at 344-45.) We also found that the rule at issue did affect private rights and procedures and, therefore, should have been published in

the Illinois Register with notice to the public, comments invited or hearings held, and filed with the Secretary of State. (Ill. Rev. Stat. 1987, ch. 127, pars. 1005, 1005.01.) We directed, upon remand, the entry of summary judgment in plaintiff's favor, solely as it relates to the public interest, as well as the circuit court's consideration of restraining enforcement of the Chicago Rules locally and statewide, and for such further relief as may be necessitated under plaintiff's complaint. *Berrios*, 190 Ill. App. 3d at 348-49.

The circuit court entered an order following the remand instructions on March 19, 1990, premised upon certain stipulations and agreements between the parties. In substance, it was agreed (1) the Chicago Rules (except for one modification) would remain in force pending the promulgation of new rules; (2) certain claimants whose cases were dismissed pursuant to Chicago Rules would have the opportunity to reinstate their claims; (3) the Commission would post and publish notices regarding reinstatement of cases; (4) the chairman of the Commission would schedule public hearings regarding the adoption, amendment or repeal of previously (properly) promulgated rules; and (5) plaintiff's attorneys are entitled to fees and costs for institution of the action as provided by the APA. Pursuant to the agreement, the Commission endeavored to reinstate over 100 cases.

On June 29, 1990, plaintiff's attorneys, Thomas R. Challos, Jr., and Marshall E. Winokur (sometimes petitioners), each filed their first petition for attorney fees and costs. From October 23, 1987, through June 21, 1990, Challos claimed 284.75 hours of work spent on plaintiff's lawsuit and $1,801.81 in expenses. From October 23, 1987, to June 20, 1990, Winokur claimed 220.90 hours and $380.50 in expenses attributed to plaintiff's case. Included within the time frame were the original circuit court proceedings, the appeal and part of the activity on remand. Neither attorney claimed an hourly rate in his initial petition.

On August 16, 1990, petitioners filed a joint petition regarding the prospective attorney fee award, claiming that under the APA reasonable expenses and attorney fees should include a "lodestar"[1] of $235 per hour, to be weighted by a "multiplier" of three to reflect the contingent nature of the action and the public benefit. The public benefit was identified as the reinstatement of more than 100 dismissed workers' compensation cases.

---

[1]"Lodestar" has been defined otherwise as the product of reasonable hours multiplied by a reasonable rate. See *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air* (1986), 478 U.S. 546, 565, 92 L. Ed. 2d 439, 456, 106 S. Ct. 3088, 3098.

On September 6, 1990, the Commission objected to the attorneys' fee request on three bases. First, certain hours claimed were either duplicative or inappropriately claimed; second, the hourly rate requested was not reasonable, where both attorneys customarily charge $150 per hour; and third, the use of a multiplier under section 14.1(b) was inappropriate.

On October 22, 1990, the circuit court held a hearing on the fee petitions. Petitioners called two expert witnesses and testified themselves as witnesses.

William J. Harte, an attorney licensed to practice in Illinois since 1959, was called as an expert. Harte testified that he knew both attorneys, considered their reputations to be exemplary, and recognized their abilities in handling complex litigation. He asserted that "what one would expect a rate to be charged by a person of the competency of the petitioners and other lawyers in addressing this kind of litigation" would be the $235 hourly rate requested as a lodestar.

In regard to the use of a multiplier, Harte stated:

"Where you have a rate fixed as a result of statutory authority and where you have the compensation being paid by the State here *** and where you do not have a specific fund from which the fee can be obtained, that is, from the class members who actually experienced the benefit, the question becomes sharper in my view."

He concluded, however, an increase by a multiplier of three was appropriate due to the case being contingent and risky against a government entity, the kind of case which is lost more often than won, the "extreme" competence of opposing counsel, and the public benefit obtained by other claimants whose cases were reinstated.

On cross-examination, Harte acknowledged that none of the cases upon which he relied regarding fee awards were brought pursuant to the APA. He also asserted that he never received a multiplier in a non-class-action suit. He considered the present case to be a class action request, however, despite the absence of such allegations in the pleadings and lack of class certification, because the case fell into the public interest exception to mootness.

Arthur Susman, an attorney licensed to practice in Illinois since 1959, specializing in class actions, testified regarding hourly rates. In his opinion, the fair and reasonable hourly rate for attorneys similar to those in the present case, complex litigation, would be $235 per hour with a multiplier of three. Susman was of the opinion that attorney fees under the APA for this case should be awarded as in class action suits because the case benefitted more than one person. Addi-

tionally, a multiplier was justified due to the contingent nature of the cause. Susman added that the multiplier should be applied only until the time the suit became noncontingent, which was in March of 1990 upon remand. He urged that a multiplier was appropriate in cases against a public body because of the great difficulty in litigating against the government and because of the high risk of loss. The lack of class certification or of a common fund to pay attorney fees did not alter his view regarding the multiplier.

On cross-examination, Susman asserted that he had reviewed only the fee petitions and responses, not the pleadings or briefs. His opinion about the case's significance was based upon conversations with the attorneys. He never handled an administrative procedure case and knew of no cases under the APA for fees based on a lodestar with a multiplier. In cases applying multipliers, the normal range is 1½ to 3, depending on the contingency of the case and the quality of work. He believed that multipliers applied to cases won compensate the attorney for lost cases.

Challos testified that he had been an attorney since 1966. On plaintiff's settled claim against his employer, Challos received an attorney fee award of $6,000 pursuant to the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*). Over 99% of his work is performed on a contingency fee basis. Currently, and within the last five years, he has charged some businessmen as clients a flat hourly rate of $150. He had no prior experience with cases filed under the APA.

Winokur testified that he had been an attorney since 1952. He acknowledged this was his first APA case. He had no fee schedule and his hourly fee clustered around $150 per hour, but was sometimes lower for certain clients.

No evidence was offered with respect to the fee arrangement between plaintiff and petitioners Challos and Winokur. No evidence was offered in refutation of the testimony given by plaintiff's experts Harte and Susman.

The circuit court found a public benefit in that numerous cases were reinstated. Considering the degree of difficulty due to the circuit court's original ruling against plaintiff, attorney fees were set at $210 per hour with a multiplier of two to be applied until March 15, 1990.[2] On October 24, 1990, the court entered judgment on fees and costs

---

[2]This apparently represents the date on which the case became "noncontingent," upon remand by this court.

for the time period of October 23, 1987, through March 15, 1990, at the above rate. The sum of $109,725 was calculated for Challos' fees with an additional $1,801.81 in expenses and $87,276 in fees was awarded to Winokur with $376.50 in expenses.

On November 7, 1990, Challos filed a supplementary petition for attorney fees covering the period of March 16, 1990, to October 30, 1990. He claimed 51 hours and 5 minutes at $210 per hour, totalling $10,727.50.

On November 9, 1990, Winokur filed a petition for additional attorney fees for the period of March 16, 1990, through October 24, 1990. He alleged 52.5 hours at $210 per hour, totalling $11,025.

The Commission filed a motion to reconsider on November 21, 1990, arguing lack of evidence to support the hourly rate, where the attorneys had testified to charging $150 per hour prior to this litigation. Also asserted was that there was a lack of authority and evidence to justify a multiplier in an APA case. Petitioners responded that the award was within the court's discretion based upon the evidence and case law.

On January 30, 1991, the motion for reconsideration was denied, and attorney fees of $10,727.50 and $11,025 were awarded to Challos and Winokur, respectively. The October 24, 1990, and January 30, 1991, orders were stayed pending appeal on February 8, 1991. On March 1, 1991, the Commission filed a notice of appeal.

I

The Commission contends that the application of a multiplier to an attorney fee award under the APA is unauthorized.

■ The proper construction of section 14.1 in relation to attorney fees first must be undertaken. Construction of the statutory fee provision is a question of law (*Berrios v. Rybacki* (1989), 190 Ill. App. 3d 338, 348, 546 N.E.2d 651), as is the question of whether that section allows the use of a multiplier. Section 14.1(b) is in derogation of common law because the right to an attorney's fee from one's opponent did not exist at common law (*Gonzales-Blanco v. Clayton* (1983), 120 Ill. App. 3d 848, 458 N.E.2d 1156), and must be strictly construed. (*Clayton*, 120 Ill. App. 3d at 850.) In construing the provisions of section 14.1(b), we look to the plain language of the statute. (*Metropolitan Life Insurance Co. v. Washburn* (1986), 112 Ill. 2d 486, 493 N.E.2d 1071.) Section 14.1(b) provides:

"In any case in which a party has any administrative rule invalidated by a court for any reason, including but not limited to the agency's exceeding its statutory authority or the agency's

failure to follow statutory procedures in the adoption of the rule, the court shall award the party bringing the action the reasonable expenses of the litigation, including reasonable attorney's fees." Ill. Rev. Stat. 1987, ch. 127, par. 1014.1(b).

Based upon the foregoing statutory language, as the Commission asserts, a multiplier under section 14.1(b) was unjustified because multipliers are based upon the contingent nature or risk of litigation, thereby providing compensation for cases lost.[3] The plain language of the statute demonstrates the General Assembly's intent to limit an award under section 14.1(b) to an amount for reasonable expenses paid or incurred in the *particular* successful litigation brought by the parties. No compensation is contemplated for prior or future lost or won causes. A rule declared invalid in one case cannot give rise to attorney fees in a separate case, for example, under section 14.1(b). (*Sutton v. Edgar* (1986), 147 Ill. App. 3d 723, 498 N.E.2d 295.) By interpreting "attorney fees" as being an expense of litigation, and "expenses" as meaning monetary payment or financial loss, an award under section 14.1(b) must be read to refer to reimbursement or compensation for presently and successfully litigating a rule's invalidity. Limiting awards to such particular cases excludes the use of a multiplier because, as one of its purposes in application, the multiplier provides compensation for the loss of other causes.

Petitioners insist that the use of the words "shall" award expenses including attorney fees, rather than "may," and use of the word "reasonable" in section 14.1(b), requires a liberal construction of the section, which would allow the use of a multiplier. Their argument does not persuade. In a class action case, plaintiff attorney's fees and expenses are not charged against the adversary, but against persons or entities that are benefitted by funds created or preserved by the plaintiff's success. (*Saltiel v. Olsen* (1981), 85 Ill. 2d 484, 426 N.E.2d 1204.) Here there is no fund and the fees would be paid from tax revenues.

■ The class action attorney fee award is unlike the common contingent fee. The class action fee award does not result from a volun-

---

[3]Ordinarily, "contingency" contracts for attorney fee charges relate to a percentage of the judgment or award secured by the attorney for his or her client. Where there is no judgment or award because the case was lost, there is no attorney fee due and owing from the client. Here, the risk or contingency is one in which the challenge to a rule may have been victorious, in which an attorney fee would have been allowed under section 14.1(b), or the challenge may have been defeated, in which instance no fee is contemplated by the statute.

tary agreement between the client and his attorney, but is an amount taken by order of the court from money belonging to others who also benefitted, which is dependent upon the exercise of the court's sound discretion. (*Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019.) No doubt these distinctions were contemplated by expert witness Harte when he noted that "the question becomes sharper" under these present circumstances.

Petitioners suggest that they merely seek fee shifting, rather than withdrawal from an established fund. Here, the term "reasonable" would be utilized to secure enhanced fees not from a common fund established in a class action case for all successful litigants, but from the State's general revenue fund. How this would make the multiplier more reasonable is neither explained nor discernible. Such an interpretation is unauthorized, unprecedented and cannot be inferred fairly from the language of section 14.1.

The parties additionally rely upon legislative debates in their proposed construction of section 14.1(b). (*Chicago Tribune Co. v. Johnson* (1985), 106 Ill. 2d 63, 477 N.E.2d 482.) Although it is true, as petitioners maintain, that no mention is made in the debates of a cap on fees, and the legislators were aware of the Federal cap of $75 per hour for attorney or agent fees awarded under the Equal Access to Justice Act for similar situations (5 U.S.C. §504 (1988)), yet, the Illinois legislators were concerned with limiting liability under section 14.1 specifically to when the agency made untrue charges, found to be untrue or without reasonable cause (section 14.1(a)) and when a rule was successfully overturned (section 14.1(b)). (82d Ill. Gen. Assem., House Proceedings, June 16, 1981, at 132.) Significantly, no reference is made to a multiplier in the debates, although its use then, as now, was well known.

The Commission maintains that the allowance of a multiplier will have two significant ramifications on State government. First, it will deplete the general revenue funds because a multiplier will be routinely requested and may be awarded due to the inherent risk of loss in every case. Second, there would be an adverse effect upon the agencies, which would (1) chill promulgation of rules which are not explicitly required by statute; (2) promulgate internal procedures as regulations to be "safe" so that they do not result in substantial dollar litigation; and (3) make the internal procedures very general and, therefore, meaningless or so numerous and specific in anticipation of every circumstance as to be burdensome, costly and rigid.

In Federal cases, a number of factors have been considered in analyzing the application of a multiplier to attorney fees. Among those

factors that have been included are (1) the intended scope of a sovereign's waiver of immunity (*Pierce v. Underwood* (1988), 487 U.S. 552, 101 L. Ed. 2d 490, 108 S. Ct. 2541 (*Pierce*)); (2) the difficulty of the case, skill of counsel and results obtained are already reflected in the market rate (*Pierce*, 487 U.S. 552, 101 L. Ed. 2d 490, 108 S. Ct. 2541); (3) the lodestar figure includes most if not all relevant information constituting a reasonable attorney fee (*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air* (1986), 478 U.S. 546, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (*Delaware I*)); (4) a multiplier based upon risk compensates attorneys for unsuccessful claims, which is inconsistent with an intent to award attorney fees only to a prevailing party (*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air* (1987), 483 U.S. 711, 97 L. Ed. 2d 585, 107 S. Ct. 3078 (plurality) (*Delaware II*)); (5) inaccuracies exist in determining the multiplier due to the court's retroactive estimate of the prevailing party's chances for success; (6) defendants with stronger cases are penalized by subsidizing plaintiff's attorney for prior unsuccessful cases (*Delaware*, 483 U.S. 711, 197 L. Ed. 2d 585, 107 S. Ct. 3078); and (7) increased fees based upon risk create windfalls for attorneys because a lodestar already considers the attorneys' skill, experience and hours of work, the true factors in success (*Delaware*, 483 U.S. 711, 97 L. Ed. 2d 585, 107 S. Ct. 3078). Each of the foregoing arguments equally can be applied to the case *sub judice* in defeat of a multiplier enhancement here.

Although multipliers in fee shifting statutes are not always precluded, their use is greatly restricted and requires a high standard of proof to justify. (See *Delaware*, 483 U.S. at 731, 97 L. Ed. 2d 585, 107 S. Ct. 3078; *Delaware I*, 478 U.S. at 569, 92 L. Ed. 2d at 459, 106 S. Ct. at 3100 (Blackmun, J., dissenting, joined by Marshall & Brennan, JJ.); *Board of Education of the Aptakisic-Tripp School District No. 102 v. County of Lake* (1987), 156 Ill. App. 3d 1064, 509 N.E.2d 1088.) Further, if a benefit to the public is a justification for a multiplier, then any award under section 14.1(b) would be subject to a multiplier because a change in a rule always would logically affect others.

The use of a multiplier in this statutory fee setting was unauthorized and improper, and must be reversed and vacated.

In light of the foregoing analysis and result, we need not address the Commission's contention that the application of a multiplier was an abuse of discretion in this case.

## II

The Commission urges that the circuit court abused its discretion in allowing duplicate hours and hourly rates above petitioners' usual billing rates.

The Commission contends that duplicate hours were spent and billed by petitioners while they simultaneously went to court, took depositions, had conferences, and conducted research. Payment for employment of two or more attorneys is not in violation of case law and is recognized as a common practice which may ensure an economical division of labor (see *Kurowski v. Krajewski* (7th Cir. 1988), 848 F.2d 767, 776), as well as a means of ensuring that significant facts or inquiries are not overlooked. *Bohen v. City of East Chicago* (N.D. Ind. 1987), 666 F. Supp. 154, 157.

The Commission further avers that petitioners have never charged the $210-per-hour rate awarded and should not charge the State what they would not have charged the client.[4] Petitioners respond that $210 per hour was reasonable because it was in accord with the testimony given, notwithstanding the fact that the court was not bound by the experts' opinions. Experts Harte and Susman both testified that the prevailing market hourly rate for services of the type rendered by petitioners was $235 per hour, an amount chargeable by attorneys of reasonably comparable skill, experience and reputation. No evidence to the contrary was adduced by the Commission. The circuit court adopted a rate within the range of the evidence. We find no error.

For the reasons set forth, we reverse and vacate the application of a multiplier to the attorney fees awarded in the case; affirm the hourly rate of $210 established by the circuit court; and remand for further proceedings consistent with this opinion and consideration of additional fees as the court finds attributable to the appeal.

Affirmed in part; reversed and vacated in part; and remanded for further proceedings.

SCARIANO and DiVITO, JJ., concur.

---

[4]The Commission asserts that the experts did not testify as to the proper hourly rate for APA cases. A reading of the record, however, shows that the experts assayed the value of the fee regardless of whether the case would be classified as an APA case or as a class action.